**STATE v. BARTLESVILLE LODGE NO. 284, A. F. & A. M., et al.**

No. 24853. May 15, 1934.

Rehearing Denied June 12, 1934.

J. R. Charlton, Sp. Asst. Atty. Gen., W.

F. Hurt, Co. Atty., and B. B. Foster, for plaintiff in error.

Campbell & Ray and J. T. Shipman, for defendants in error.

WELCH, J. This is an appeal from the judgment of the county court of Washington county, Okla., adjudging that certain property, being a nine-story building, was not subject to ad valorem taxation. The building is located in Bartlesville, Okla., and owned by Bartlesville Lodge No. 284, Ancient, Free and Accepted Masons. The building is occupied by said lodge as its official home, and the greater portion of the building is rented to such tenants as desire to occupy it and as are acceptable as tenants. The sums received as rents are used to further the purposes of the lodge, except such only as are needed to maintain the building and to discharge obligations incurred in the construction of the building.

Section 12329, O. S. 1931, provides as follows:

"Property of Fraternal Orders Exempt. That all real estate belonging to fraternal orders or societies, on which is erected a building occupied wholly or in part by the fraternal order or society owning the same, shall be exempt from taxation, either directly or indirectly, and the renting of any portion of such building shall not subject such real estate to taxation; provided, the net proceeds derived therefrom shall be devoted exclusively to benevolent or charitable purposes."

The plaintiff in error contends that this section of the statute is not applicable in this case, on account of the method and manner of the financial arrangements under which the building was constructed and rented and handled after its completion. In consideration of the question we must note these details.

In 1916, the lodge owned certain lots in Bartlesville, and desired to erect a building thereon, but was without sufficient funds to erect a suitable and desirable building. One Dr. Weber, a member of the lodge, from his private funds undertook to furnish the necessary money to construct the building, save and except the sum of $88,950, which last-named sum was raised by building bonds issued by the lodge. The building was constructed at a total cost of $525,000, upon an oral arrangement and agreement that the lodge should occupy the ninth or top floor thereof, and that Dr. Weber would look after the renting of the balance of the building and receive and account for all of the rents, income, and profits therefrom until he should be reimbursed for all his expenditures in the construction of the building, with interest at 6 per cent. per annum. The building was so occupied and rented until on or about the 15th day of September, 1932, when the indebtedness to Dr. Weber was fully paid off, together with a portion of the building bonds, leaving outstanding at that date only a portion of the building bonds, which balance, according to the agreed statement of facts and as estimated by the parties, would be fully retired by about September 15, 1934.

It was further stipulated by the parties that, "when the balance of the indebtedness against said building had been paid under said arrangement, then the net income from said building and premises, after maintenance and other expenses are paid, will be devoted exclusively to charitable and benevolent purposes," and that "neither said lodge nor any member thereof, nor said Grand Lodge nor any subordinate lodge or member of any such organization will derive or has derived any profit from said premises," and that "said lodge, as are all Masonic Lodges, was organized for benevolent and charitable purposes and is bound by Masonic laws, rules, and regulations which provide that no profit can be derived from the operation or maintenance of said premises, but that all such net income shall be applied exclusively to charitable and benevolent purposes," and "no attempt has ever been made, until this proceeding was instituted, to tax said premises, the same having always been considered exempt from taxation under the laws of the state of Oklahoma, especially section 12329, Oklahoma Statutes, 1931, by the officers of said county."

At some time, the exact date not being shown, between the time when the building was constructed and the final payment of the Weber indebtedness in September, 1932, Dr. Weber died. Up to the time of his death the payments were made to him, and after his death the payments were made to the executor of his estate until final liquidation of the indebtedness, in the manner and at the time above stated.

Plaintiff contends that the building is not exempted from taxation by any specific constitutional provisions, and that the statutory provision, section 12329, supra, is not applicable under the facts in this case. No attack is made upon the enactment or any provision thereof, other than that it is inapplicable here.

The contention that this statute does not apply is based upon plaintiff's six contentions, in substance: (1) That on account of the financial arrangements for the construction of the building as above set out, Dr. Weber himself, and not the lodge, was the owner of the building; (2) that if the Masonic Lodge did have a residuary right to the building in the indefinite future, it was not such an ownership as would exempt the building from taxation; (3) that the lodge was not the owner of the building within the meaning of the section of the statute under consideration, for the reason that the lodge never obligated itself to pay back to Dr. Weber his investment, nor any part thereof, nor interest thereon, should he fail to realize the same out of the income of the building; (4) "that it is contrary to the policy of the state, as expressed in the Constitution and statutes of the state, to permit private persons or corporations to escape taxation of their capital investments, by simply placing it on property of fraternal or other societies, and still control the investment, and exclude the fraternal society from any use or participation in the  management or control of the property, or the income therefrom;" (5) that the net proceeds from the property were appropriated wholly to the interest of Dr. Weber, and after his death to his estate; and (6) that the building is the property of the Howard Weber estate, and as such is taxable and is not exempt from taxation by any specific constitutional provision.

The agreed statement of facts upon which the cause was submitted to the trial court also contained, among other statements, this stipulation:

"The property which the tax ferret seeks to have assessed and placed on the tax rolls is described as follows:

"Eight floors and basement of the building on lot one (1); and the north half of lot two (2) in block thirty-eight (38) of the original town of Bartlesville, in said county and state.

"The title to said lots during all of the times hereinafter mentioned was and is now in the defendant, Bartlesville Lodge No. 284 A. F. & A. M., the deed having been taken in the name of three trustees and their successors. The defendant, Bartlesville Lodge No. 284, A. F. & A. M. at all of such times was and is now a regularly chartered lodge of Masons, not incorporated, its charter having been duly issued by the Grand Lodge of the state of Oklahoma."

We have copied plaintiff's contention No. 4 in full, and in reference thereto we observe that while Dr. Weber was authorized to rent the rooms of the building not used by the lodge, he did not 'exclude the fraternal society from any use or participation in the management or control of the property," for the lodge did use and control that portion of the property needed and occupied by the lodge. In reference to that numbered contention we must observe further that in this case there is nothing to indicate that the financial arrangement between the lodge and Dr. Weber had any of the attributes of a subterfuge, conspiracy, or plan to construct the building for the purpose of creating in Dr. Weber the benefits of a tax exemption. Upon the other hand, the construction of this building apparently resulted from the laudable desire of the lodge to construct and own a presentable building, a home for its lodge work and to further the general purposes of the lodge in its charities and benevolences without going outside of its building to do so, and without branching out into the marts of commerce in an auxiliary business enterprise, and without going beyond the limits of a well-recognized and proper activity, and also from the desire of Dr. Weber, a member of the lodge, to further the purposes of the lodge from his private funds. It is worthy of note that this large sum was furnished and expended and thereafter repaid, all over a period of 15 years or more, without any written agreement whatever, and without any disagreement or discord as to any details. We see no justification for any contention that this plan was conceived and entered into for the base purpose of subterfuge to the end that private property might be wrongfully exempted from taxation.

As to the remaining contentions of the plaintiff, we think they are disposed of by a statement of the contention and reference to the statutory provision, section 12329, supra, and the quoted portion of the agreed statement of facts.

While it is true that the lodge did not obligate itself to repay Dr. Weber otherwise than from the rents received, and that Dr. Weber, and after his death, his executor, did rent the rooms and collect the rent to be applied on the debt, still we have no doubt that from the construction of the building the lodge was at all times the owner of the building, and the building was specifically exempted from taxation under that section of the statute under consideration. Indeed, we do not see how the plaintiff could contend otherwise, in view of the last-quoted

portion, which was the first paragraph, of the agreed statement of facts on which the case was tried, and which must be held to bind the parties to this fact, which is not contradicted by the other facts detailed, that the lodge was and is the owner of the building as well as the lots.

Although the financial arrangement was perhaps unusual, we find no basis for the conclusion that Dr. Weber was himself the owner of the building with the lodge owning only a residuary right in the indefinite future. We can reach no conclusion but that the lodge was at all times the owner of the building, and that Dr. Weber was the creditor of the lodge to the extent of the funds advanced by him, with the right in Dr. Weber to have the rents applied to his debt until the same was liquidated. Whether the lodge collected the rent and accounted for it and paid it all over to Dr. Weber, or whether Dr. Weber himself attended to the collection of the rent and accounted to the lodge by allowing credit on the debt for all sums collected, we regard as immaterial.

Having concluded that the lodge was and is the owner of the building, and that the various contentions of the plaintiff in error cannot be sustained, and that therefore the section of the statute, 12329, supra, is applicable to this case under the facts shown, it follows that the judgment of the trial court in concluding that the property is not subject to taxation was in all things a correct conclusion, and the judgment of the county court of Washington county is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BUSBY, JJ., concur. RILEY, C. J., and BAYLESS JJ., absent.