(No. 11618.—Decision set aside.)

THE MOST WORSHIPFUL GRAND LODGE OF ANCIENT FREE AND ACCEPTED MASONS OF THE STATE OF ILLINOIS, Appellant, *vs.* THE BOARD OF REVIEW OF MOULTRIE COUNTY, Appellee.

*Opinion filed December 19, 1917.*

1. CHARITIES—*a Masonic lodge is a charitable institution.* The primary objects of a Masonic lodge being benevolence and charity, such a lodge is a charitable institution, and the Masonic Home of the grand lodge of Masons of Illinois, together with the land used for its maintenance, is exempt from taxation as the property of a public charity.

2. SAME—*what constitutes public charity.* To constitute a public charity the benefit must not be conferred upon certain and defined individuals but must be conferred on indefinite persons composing the public or some part of the public, but the indefinite class may be of one sex or the inhabitants of a particular city, town or county, or members of a particular religious or secular organization.

3. SAME—*what determines whether property is exempted from taxation as a public charity.* The primary use to which property is put is to be considered in determining whether it is exempt from taxation as a public charity under the seventh clause of section 2 of the act for the assessment of property, as amended in 1915, and the fact that there is a charge on the property in the nature of an incumbrance is not material where the total net income is devoted to a charitable use.

AUDITOR'S certificate of appeal to review the decision of the board of review of Moultrie county.

JENNINGS & ELDER, for appellant.

EDWARD J. BRUNDAGE, Attorney General, C. R. PATTERSON, State's Attorney, and A. D. RODENBERG, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The board of review of Moultrie county denied the application of the appellant for exemption from taxation of 200 acres of land connected with and operated as a part of a home owned and maintained by the appellant for the care and support of Master Masons, their widows and orphans, unable to earn their own living, dependent on others for support and without relatives or friends able or willing to support them. An appeal having been taken from the decision of the board, the Auditor of Public Accounts has certified the record to this court.

The appellant was created a corporation by an act of the General Assembly approved February 20, 1847, and amended in 1855. Robert A. Miller died in 1891, leaving a last will and testament by which he devised 264 acres of land in Moultrie county to his widow for and during her natural life with remainder in fee to the Masonic Grand Lodge of the State of Illinois, upon condition that the grand lodge should cause to be erected and maintained thereon a suitable home for widows and orphans of Masons, and if the grand lodge did not accept the devise the land was to become the property of Moultrie county, to be used as a farm for the support of the paupers of the county. Upon the death of the widow the grand lodge accepted the devise, and since 1904 has caused to be constructed on 20 acres near the southwest corner of the lands, buildings for the

281 –31

care and support of the beneficiaries of the charity, including a hospital and a power plant, at a total expenditure of $275,000. These lands are not involved in the application for exemption. The 200 acres claimed by the appellant to be exempt adjoin the lands devised, separated therefrom only by a public highway, the whole constituting a single farm operated for the maintenance of the charity. One hundred acres of the land was conveyed on October 4, 1915, by Edward C. Swain to the grand lodge in consideration of one dollar and the payment of $500 on November 1 of each year to the grantor during his lifetime. The remaining 100 acres was conveyed on the same day by Swain to Irving Shuman and Pearl Shuman, his wife, for the like consideration of one dollar and a payment of $300 to the grantor on November 1 of each year during his lifetime. On October 5, 1915, Shuman and wife conveyed the land to the grand lodge. The deeds from Swain to the grand lodge and to the Shumans, and from the Shumans to the grand lodge, were subject to the condition subsequent that on failure to pay the amounts reserved, or taxes, the title should revert to the grantor, and he also reserved to himself the right of entry upon the premises during his lifetime to remove therefrom such timber as he might need for firewood. All the deeds were subject to the condition that the premises, or the proceeds thereof, and the net income therefrom, should be used for the maintenance and support of the home and hospital on the farm devised to the grand lodge by Miller. A farmer employed by the month is allowed to occupy the dwelling house on these lands and is also furnished a truck patch in addition to his wages. The entire 464 acres are farmed, controlled and managed by committees of the grand lodge for the support of the home and hospital, and in case of a surplus of crops the same is sold and the proceeds become a part of the charity fund for the maintenance of the home. The grand lodge owns and keeps on the farm thirty-two head of milch cows, thirty head of

ordinary cattle, thirteen head of grown horses and two colts, and employs 40 persons as nurses, farm hands, engineers and laborers on the premises. There are 130 persons maintained in the home, who receive board, clothing, laundry, medical attendance, nursing and entertainment free of charge, and those requiring hospital treatment receive free care and attendance by nurses and physicians in the hospital. There are 153,000 Master Masons in the State, who pay a capitation tax of one dollar per member, yielding $153,000 annually, which is divided by the grand lodge into two parts, forty-five per cent going to the grand lodge for its purposes and fifty-five per cent to the charity fund, which also receives additions from donations, gifts and bequests and from the proceeds of invested funds. For the year 1916 $41,000 was appropriated out of the charity fund for the use and maintenance of the Masonic Home in addition to what was furnished by the farm.

The seventh clause of section 2 of the "act for the assessment of property and for the levy and collection of taxes," as amended in 1915, exempts from taxation "all property of institutions of public charity, * * * when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." (Laws of 1915, p. 576.) It has been quite uniformly held by the courts that the primary objects of a Masonic lodge being benevolence and charity, such a lodge is a charitable institution. (*Morrow* v. *Smith,* 145 Iowa, 514; 22 Ann. Cas. 1183, and note.) That the Masonic Home is a charitable institution and that the property in question is devoted to charity is beyond question and is not denied, but the objection made before the board of review and now insisted upon is, that the home is not a public charity because its benefits are restricted to Master Masons, their widows and orphans, and that such limitation deprives the institution of the character of a public charity. That question has been argued by counsel, and

also the question whether the lands are actually and exclusively used for the charitable purposes of the home and not leased or otherwise used with a view to profit.

The position that a charity is not public where the beneficiaries are limited to members of an association was taken by the Supreme Court of Pennsylvania in *Philadelphia v. Masonic Home of Pennsylvania,* 160 Pa. St. 572. The court there decided that a charity may restrict its admissions to some class of humanity and still be public, provided the classification is determined by some distinction which involuntarily affects or may affect the whole people; that it may be for the blind, for the mute, for the aged, for infants, for women, for men, or for different callings or trades; but when the right of admission depends on the fact of voluntary association with some particular society the distinction does not concern the public, and that a home, without charge, exclusively for Presbyterians, Episcopalians, Catholics or Methodists would not be a public charity, because the distinction is artificial and not one incident to humanity. A different conclusion was reached in *Widows and Orphans Home of Odd Fellows v. Commonwealth,* 126 Ky. 386, and *City of Indianapolis v. Grand Master of Grand Lodge of Indiana,* 25 Ind. 517, for reasons which appear to us to be sound.

It is the duty of the public to care for the indigent and the poor who are sick and afflicted, and while the public burden is not for the relief of aged and indigent Masons as such, the public is not relieved from the burden because they are Masons, and any institution which serves no selfish interest, but discharges, in whole or in part, any such duty, is a public charity. To constitute a public charity the benefit must not be conferred upon certain and defined individuals but must be conferred on indefinite persons composing the public or some part of the public, but the indefinite class may be of one sex or the inhabitants of a particular city, town or county or members of a particular religious or secu-

lar organization.  (5 R. C. L. 293; 11 Corpus Juris, 338.)
The fact of such discrimination among those members of
the general public who need relief does not deprive the char-
ity of its public nature.  While classifications depending
upon race, color or sex involuntarily affect individuals of
the general public, membership in a church or society is no
more involuntary than the selection of different callings or
trades, as in the case of seamen, locomotive engineers, la-
borers, farmers, or other classes that would come within the
distinction of a public charity in the case where the distinc-
tion was drawn.  A home for working girls provided at
moderate cost, with officers serving without compensation,
with free attendance of physicians on the hospital staff, and
a library and weekly entertainments, was held to be a pub-
lic charity in *Franklin Square House* v. *Boston,* 188 Mass.
409, and we see no apparent reason for saying that a clas-
sification must be based on something which involuntarily
affects the public at large.  A public charity cannot be lim-
ited to defined individuals, but if it operates upon indefinite
persons whose care and support rest upon the public the
effect is to afford relief from the public burden and the
charity is public in its nature.  The Masonic Home is a
public charity.

The remaining question is whether the lands claimed to
be exempt are actually and exclusively used for the chari-
table purposes of the institution.  They are subject to the
charge of $800 per annum to be paid to the grantor during
his lifetime and to his right to take such timber as he may
need for firewood.  This is a charge in the nature of an
incumbrance, but the total net income is devoted to the pur-
poses of the charity.  In *Ingraham* v. *Ingraham,* 169 Ill.
432, there was a devise to trustees for the erection and
maintenance of a hospital for the treatment of the sick and
diseased, which was a public charity, and it was held that
the charity was not invalidated by the fact that the trustees
were authorized to appropriate part of the fund to the sup-

port of certain of the testator's kindred in case they should come to want, the unused portions of such appropriation to revert to the original fund. The primary use to which property is put is to be considered in determining whether it falls within the terms of the exemption. (*First Congregational Church of DeKalb* v. *Board of Review,* 254 Ill. 220.) The primary purpose and use of the lands in question being the maintenance of the home and the whole net income being devoted to that use, they come within the statutory definition of lands actually and exclusively used for charitable or beneficent purposes and not leased or otherwise used with a view to profit.

The decision of the board of review is set aside.

*Decision set aside.*