## BOARD OF COUNTY COM'RS OF TULSA COUNTY v. SAND SPRINGS HOME.

### No. 27324.　June 20, 1939.

Dixie Gilmer, County Atty., John Conway, Asst. County Atty., Joe T. Dewberry, Albert C. Hunt, and C. W. King, for plaintiff in error.

Allen G. Nichols, E. J. Doerner, Paul P. Pinkerton, and Harold C. Stuart, for defendant in error.

RILEY, J. This appeal grows out of an application of Sand Springs Home, defendant in error, to have removed from the tax rolls of Tulsa county certain farm lands and town lots located in Tulsa county and owned by it.

The board of county commissioners held the property taxable and denied the application. Sand Springs Home appealed to the district court, where trial de novo was had. The district court held the lands exempt and entered judgment removing same from the tax rolls, and the county appeals.

The parties are hereinafter referred to as the Home and the County.

The Home is a charitable institution incorporated in 1912, under the laws of the state of Oklahoma. The Home owns approximately 300 acres of land near Sand Springs upon which it maintains an orphan's home where 100 or more orphans (who have neither father nor mother) are kept and maintained. Upon the same tract the Home also maintains a widow's colony where it has 40 cottages, in each of which it usually has a widow having two or more minor children. Where the mother is able to work and finds employment, she does so, but except for such earnings the widows and their children are kept and maintained at the expense of the Home.

It is conceded that this land and all the improvements thereon is exempt and no attempt has ever been made to tax it. In addition thereto the Home owns about 3,500 acres of farm land in Tulsa county, and many town lots in Sand Springs and Tulsa. It is this property which the County contends is taxable. It was placed on the tax rolls for the years 1931 to 1934, inclusive, and these proceedings were commenced to have said property removed from the tax rolls for said years.

Some of the property was donated and conveyed to the Home by Charles Page long before his death, and part of it was devised to the Home by the will of Charles Page.

It is admitted by the County that the orphans' home and widows' colony are both primarily charitable institutions, and that

their work is of a beneficent and charitable character.

The County contends that the real property here involved is not exempt from taxation for the reason that no part thereof is used directly in the operation of the orphans' home, widows' colony, or other charitable works, and that the income therefrom is not used exclusively for charitable purposes.

Substantially all the property owned by the Home was acquired by gift or devise from Charles Page. The declaration of trust, and the will of Charles Page, both provide in substance that certain annuities provided in the will to be paid to Lucile Page, wife of Charles Page, Mary Charlie Page, their adopted daughter, Elmore A. Page, Ada Ruth Page, and Edwyna Elizabeth Page, children of Charles Page's brother, should be a first charge against the income from all the property given by Charles Page to the Home. Lucile Page, the wife, was given an annuity of $2,000 per month during her life, Mary Charlie Page, the daughter, was given an annuity of $500 per month during her lifetime, with the further provision that should she leave any children the same amount should be paid to such children during their lives. To each of the children of Ed A. Page was given an annuity of $250 per month during the life of such child.

By the terms of a codicil to the will, dated March 3, 1926, certain specific real property, lots 1 and 10, in block 59, Original Town of Tulsa, was devised to the Home by the following provision:

"I hereby give devise and bequeath to said Sand Springs Home, subject to the following conditions and restrictions, as well as to the provisions of said Declaration of Trust, the following described real estate and premises, situate in Tulsa County, State of Oklahoma, to wit: Lots One (1) and Ten (10) of Block Fifty-nine (59) Original Town of Tulsa, according to the recorded plat thereof, same being the real estate owned by me lying on the south side of Archer Street between Main Street and Boston Avenue, in the City of Tulsa.

"And the consideration of this devise is that the payment of the annuities and legacies hereby given to my wife and daughter, shall be a first charge to be paid by the Sand Springs Home out of the monthly rents of said real estate, and same shall be an enforcible lien against said real estate and a perpetual covenant running with said lands during the lives of my wife, Lucile Page and my daughter, Mary Charlie Page, said real estate shall also be subject in addition to said lien, to all of the provisions of said Declaration of Trust. This provision is an additional security to that provided by said Declaration of Trust."

By other provisions of the will, as well as the declaration of trust, all the property conveyed to the Home by Charles Page, whether by deed or by will, and all the income therefrom, was made liable for the payment of the annuities to Lucile Page, Mary Page, Elmore Page, Ada Page, and Edwyna Page.

The declaration of trust specifically provides that as a part of the consideration of the property conveyed and to be conveyed to the Sand Springs Home Corporation, said corporation would carry out the trust, and

"Shall and will out of any monies, property, or assets of any kind or nature received by said Sand Springs Home Corporation in any manner whatever, pay, satisfy and discharge * * * any and all payments, provisions and directions touching the support or care of said Lucile Page, wife of said Charles Page, of Mary Page, the adopted daughter of said Charles Page, and of Elmore Page, Ada Page, and Edwyna Page, son and daughters of said Edwin A. Page. * * *"

After the death of Charles Page and the admission of the will and codicils to probate, Lucile Page, the widow, declined to accept under the will, and claimed her interest in the estate under the law. Settlement was made with her, whereby the Home paid her $1,800,000, and thereafter the annuity of $2,000 per month to Lucile Page, provided in the will, was no longer paid to her. This left annuities payable under the will of $1,250 per month.

These annuities were not paid in full for the four years 1931-1934. $11,857 was paid in 1931, and $9,890 in 1932. $16,123 was paid in 1933, and $15,461 in 1934.

The net annual income of the Home for each of the four years, not allowing for depreciation, was approximately $63,750. The annual cost of maintenance of the widows' colony was approximately $13,250; annual cost of maintenance of the orphans' home was approximately $53,000, and for other purely charitable purposes, the Home expended annually an average of about $20,000. After allowance for depreciation, the books of the Home would show an apparent annual loss of about $54,000. However, during the four years the Home expended for investments and developments about $190,000. The estimated value of all the assets of the Home as of December 31, 1934, was $7,844,000. The record does not disclose the approximate value of all the property in Tulsa county sought to be subjected to taxation. The net annual income from property described, lot 1, block 59, Original Town of Tulsa, after allowance for depreciation, was about $12,-500.

It will thus be seen that assets of the Sand

Springs Home yielding an annual net income of about $63,500, not allowing for depreciation, is charged with annuities payable to the daughter, nieces, and nephew of Charles Page, in the sum of $15,000. An average of about $13,150 of these annuities was paid in each of the four years, 1931 to 1934, inclusive. Nearly 25 per cent. of the net income from all the property owned by the Home is, by the terms of the will and declaration of trust, liable first for the payment of these annuities, clearly not charitable in character.

Section 12317, O. S. 1931, sec. 22, title 68, Okla. Stat. Ann., provides that "all property, whether real or personal * * * except such as is exempt, shall be subject to taxation.

Section 12318, O. S. 1931, sec. 21, title 68, Okla. Stat. Ann., provides that "all property in this state, whether real or personal * * * except bonds of this state and its counties, cities, towns, school districts, and other municipalities of this state, except such as is exempt, shall be subject to taxation. * * *"

Section 6, art. 10, of the Constitution in connection with what was section 5914, Wilson's Rev. Stat. 1903, and section 12319, O. S. 1931, sec. 23, title 68, Okla. Stat. Ann., set forth what property shall be exempt from taxation.

Section 6, art. 10, of the Constitution provides that "all property used exclusively for religious and charitable purposes * * * and all fraternal orphan homes, and other orphan homes, together with all their charitable funds shall be exempt from taxation. * * *"

It has been said that it was the purpose of the framers of the Constitution to encourage the establishment and maintenance of universities, and to that end the Constitution provided that all property, both real and personal, of scientific, educational and benevolent institutions, colleges or societies devoted solely to the appropriate objects of the institution should be exempt from taxation so long as the property itself or the income therefrom was devoted solely to the appropriate objects of the Institution. Board of County Com'rs v. Phillips University, 144 Okla. 57, 289 P. 720.

It was likewise the purpose of the framers of the Constitution to encourage the establishment and maintenance of orphan homes, and other charitable institutions. Orphan children, without means of their own, must be maintained at public expense, or at the expense of charity.

The test then is whether the property itself or the income therefrom is devoted solely to the appropriate objects of the institution. Board of County Com'rs v. Phillips University, supra; Board of County Com'rs

v. Sisters of the Sorrowful Mother, 141 Okla. 32, 283 P. 984.

The County earnestly contends that the property of the Home, here involved, is not exempt for the reason that its income is not used exclusively for charitable purposes.

But, in University Scholarship Corp. v. Parduhn, 180 Okla. 446, 70 P.2d 84, it is said that "under the holdings of this court in Board of County Com'rs of Garfield County v. Phillips University, 144 Okla. 57, 289 P. 720; Board of Com'rs of Tulsa County v. Sisters of Sorrowful Mother, 141 Okla. 32, 283 P. 984, and State v. Bartlesville Lodge, 168 Okla. 416, 33 P.2d 507, the division of use does not defeat the total exemption." The primary use to which the property or its income is put is in some cases considered in determining whether the property is taxable. Grand Lodge v. Board of Review, 281 Ill. 480, 117 N. E. 1016; First Congregational Church v. Board of Review, 254 Ill. 220, 98 N. E. 275.

In the Grand Lodge Case, supra, certain lands were conveyed to the lodge, a charitable institution, the deed provided for a payment to the grantor of $800 per annum during his lifetime with the further provision that the net income should be applied to the support and maintenance of a widows' and orphans' home and hospital operated by the Masonic Lodge. It was there held that the primary purpose and use of the lands was for the maintenance of the home, and since the whole net income was devoted to that purpose, they came within the definition of lands actually and exclusively used for charitable purposes.

But in People ex rel. Baldwin, Co. Treas., v. Jessamine Withers Home, 312 Ill. 136, 143 N. E. 414, 34 A. L. R. 628, it is pointed out that the basis of the holding in Grand Lodge, etc., v. Board of Review, supra, is that the entire tract of land there involved was actually used and operated by the Committees of the Grand Lodge, and was actually and exclusively used for the charitable purposes of the home, and was not leased or otherwise used with a view of profit.

From People ex rel. Baldwin v. Jessamine Withers Home, supra, we gather that the rule in Illinois is that property owned by a charitable institution, if it is leased or otherwise used with a view of profit, is not exempt although the entire income from such leased premises is devoted entirely and exclusively for charitable purposes. This is because of the specific provision in the revenue statute which exempts property from taxation only when it is actually and exclusively used for charitable or

beneficent purposes, and not leased or otherwise used with a view of profit.

We have no such statutory or constitutional provision. That part of the statute, "and not leased or otherwise used with a view to profit," is not found in our statutes or Constitution.

The County cites Barr et al. v. Geary (Ind. App.) 142 N. E. 622, as a' case in point and relies partly upon the holding of the appellate court in said case. That case, in principle, does support the contention of the County, but is not in entire harmony with the holdings of this court. The decision rests in part, at least, upon the fact that the net income from the 2,800 acres of land there claimed as exempt was charged with some $9,600 in annuities, and with the payment of a $25,000 mortgage on the house of an uncle of the donor, and one-third of the residue of the income was to be paid to another devisee during her life, and two-thirds of the income, after paying all the above annuities, etc., was to be used in establishing and maintaining a home for such helpless mothers and their babes. The law of Indiana exempting property devoted to charitable purposes differs materially from the law of this state. The property there involved was not clearly exempt aside from the provisions for annuities and other charges. It was exempt in the hands of the trustees only in case it should be exempt under the general law exempting property of charitable institutions, and that law exempted only buildings set apart for charitable purposes, and the tracts of land upon which they were situated; also lands purchased with the bona fide intention of erecting buildings for such use thereon, not exceeding 40 acres.

The lands claimed as exempt consisted of some 2,800 acres in six sections. The home was located on three acres in the northeast corner of one of said sections. The court states that it assumed that the home and the three acres on which it was located were used and set apart for the home and devoted wholly to charitable purposes, and was, therefore, exempt. It is then said: "But the balance of the 2,800 acres is not set apart and used exclusively for charitable purposes, and therefore is not exempt from taxation. * * *"

It is then pointed out that the law does not provide for exemption where only a part of the income derived from the property is devoted to charitable purposes and the balance to purposes other than charity.

The trial court found and held that the trustees were not diligently and in good faith carrying out the trust arrangement.

It appears then that three reasons were given for denying exemption. The principal reason is that the several tracts, other than the three acres upon which the home was located, were not set apart and used exclusively for charitable purposes. Division of income was not the sole reason for the decision.

The rule in this state is that division of use does not defeat total exemption. University Scholarship Corp. v. Parduhn, 180 Okla. 446, 70 P.2d 84; Board of County Com'rs v. Phillips University, 144 Okla. 57, 289 P. 720.

It is in effect suggested that if exemption be allowed in this case, then large estates may be placed in the hands of charitable institutions charged with the payment of large annuities, to heirs, relatives, or other persons, free from taxation, and thus allow the annuitants to enjoy much of the benefits of the income from the property free from payment of their just share of taxation necessary to support the government. This suggestion overlooks one provision of our tax laws which prevents such results.

Section 12338, O. S. 1931, sec. 30, title 68, Okla. Stat. Ann., defines what personal property shall be included for the purpose of taxation. Subdivision 13 of said section says: "Annuities, not including pensions from the United States or any State of the Union, until paid into the hands of the pensioner."

Wilkins v. Board of County Com'rs, 77 Okla. 88, 186 P. 474, defines an "annuity" as follows:

"An annuity is a yearly payment of a certain sum of money granted to another in fee for life, or for years, and chargeable only on the person of the grantor. But the term is often used in a broader sense as designating a fixed sum, granted or bequeathed, payable periodically, but not necessarily annually."

The annuities here involved come within that definition. Then, under the rule announced in that case, these annuities are clearly taxable as personal property. Their value for such purpose is determinable under the rule there announced.

State v. Watkins et al., 108 Minn. 114, 121 N. W. 391, is a case very similar to the one here under consideration. In that case it was held:

"The annuity, however, in this, and in all similar cases, would not be a charity."

The statutes of Minnesota make annuities taxable unless the capital of the annuity be taxed within the state.

To the same effect is Williston Seminary v. County Com'rs, 147 Mass. 427, 18 N. E. 210.

The Massachusetts statute, like ours, provided that annuities were taxable.

As we view the law in this state, the annuities as such are taxable as personal property, and in addition thereto the income is subject to taxation under the income tax law.

In Sand Springs Home v. State, 168 Okla. 323, 32 P.2d 928, we held a gasoline plant owned and operated in Creek county by the Home was exempt from taxation, although the charter of the Home authorized the corporation to engage in almost any conceivable auxiliary business enterprises, as pointed out by Justice Welch in his dissenting opinion. That case was similar in many respects to the case at bar. We said that the question presented was not an open one in this jurisdiction, but is definitely settled in the Board of County Com'rs v. Phillips University, 144 Okla. 57, 289 P. 720, and other cases cited.

The net income from the operation of the gasoline plant involved was subject to the payment of the same annuities. Therefore, as stated in the case, we feel that, as between the parties before us, the question is foreclosed, at least until the Legislature speaks announcing the public policy and more clearly defining exempt property and distinguishing the use of funds derived from property so owned, in view of the many prior decisions of this court.

We think the solution of the whole problem is to follow the rule announced in State v. Watkins et al., supra, and hold that the property owned by the Home exempt though charged with the annuities, since it appears that the net income of the properties owned are applied wholly to charity, and that the annuities as such are taxable under the statute and in accord with the rule announced in Wilkins v. County Com'rs, supra. In this way the annuitants will not be permitted to escape their just share of the burden of taxation. It follows that the judgment of the trial court is affirmed.

BAYLESS, C. J., and CORN, GIBSON, HURST, and DANNER, JJ., concur. OSBORN and DAVISON, JJ., concur specially. WELCH, V. C. J., dissents.

OSBORN, J. (specially concurring). I concur in the majority opinion. It appears that the greater bulk of the income derived from the property involved herein is devoted to charitable purposes. It is my view that it was not intended by the framers of the Constitution, in exempting such property from taxation, to require that every penny of the net income derived therefrom should be devoted to charitable purposes. On the other hand, it was not intended that an individual might convey his property to a religious or charitable institution and retain a considerable portion of the income to his own use or to a noncharitable use and thereby escape the burden of ad valorem taxation.

Some language contained in our former opinions may in the future, unless modified or qualified, permit an abuse of the constitutional exemption. The majority opinion cites with approval the case of University Scholarship Corporation v. Parduhn, 180 Okla. 446, 70 P.2d 84, wherein it is stated that certain former opinions of this court hold that the division of use does not defeat the total exemption. I concurred in that opinion, but after further study I am convinced that the rule announced is too broad. An examination of the facts in the Parduhn Case, in the light of this broad statement of the law, might justify tax exemption where the bulk of the income derived from the property is used for noncharitable purposes; therefore, the language should be further limited and qualified. In my opinion, a better test is suggested by the Illinois court in the cases of Grand Lodge v. Board of Review, 281 Ill. 480, 117 N. E. 1016, and First Congregational Church v. Board of Review, 254 Ill. 220, 98 N. E. 275, wherein it is stated that the primary use to which the property is put is considered in determining whether the property is taxable.

It is therefore my view that, while the division of use does not defeat total exemption. it must appear that the greater percentage of the income must be devoted to some purpose specified in section 6, article 10, of the Constitution in order to come within its terms; that if a substantial portion of said income is devoted to another purpose, the constitutional provision has no application and the property is taxable.

DAVISON, J., concurs herein.