Fred Slenker and Elizabeth Slenker, Plaintiffs-Appellants, v. Grand Lodge of State of Illinois of the Independent Order of Odd Fellows, Defendant-Appellee.

Gen. No. 10,321.

Opinion filed September 29, 1949. Rehearing granted October 4, 1950. Additional opinion filed July 12, 1951. Released for publication August 1, 1951.

EDWARD C. SCHOEDE, EAGLE & EAGLE, all of Rock Island, and CARLYLE A. PETERSON, of Cambridge, for appellants.

FORREST B. GORE, A. J. B. SHOWALTER, both of Champaign, VIRGIL BOZEMAN, of Moline, and LOREN E. MURPHY, of Monmouth, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

About six o'clock on the evening of February 21, 1945, the plaintiffs, Fred Slenker, and his wife, Elizabeth Slenker, were riding in a DeSoto automobile being driven by Mr. Slenker on State Route 150 in a southeasterly direction about one and one-half miles north of Orion, Illinois. At the same time, David W. Gordon was driving his automobile in a northwesterly direction along the same route, and a collision occurred, resulting in injuries to the plaintiffs. Thereafter, on May 19, 1945, they filed their complaint making David W. Gordon and Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows and the Subordinate Lodges Thereunto Belonging, a corporation, defendants.

Subsequently the complaint was amended and a severance granted the defendant Gordon. The sole corporate defendant in the complaint as amended was the Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows, and as amended the complaint charged in four counts, among other things, that the said David W. Gordon was at and before the time of the collision, the officer, agent and servant of the corporate defendant and alleged that the corporate defendant, through its said officer, agent and servant, Gordon, was guilty of the several acts of alleged negligence. The defendant in its answer averred that it was a charitable organization organized under a special act of the Legislature of this State; that all of its objects and service were wholly charitable and as such it was not liable in anywise for the torts of Gordon or any of its servants. A reply was filed by the plaintiffs and, after the issues had been made up, a jury trial was had, resulting in a verdict finding the corporate defendant guilty and assessing the damages of the plaintiff, Fred Slenker, at $8,000, and assessing the damages of the plaintiff, Elizabeth Slenker, at $16,000.

The jury, in addition to these general verdicts, also answered in the affirmative this special interrogatory, viz: Was David W. Gordon at the time of the collision in question, in driving and operating his automobile, acting as an agent or servant of the defendant, Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows, a corporation, and in the scope of his employment?

Thereafter, the motion of the corporate defendant for a new trial was denied, but its motion for judgment notwithstanding the verdict was sustained, the trial court holding that defendant was a charitable organization, and as such immune from tort liability. Judgment was rendered in favor of the corporate defendant

3

and against the plaintiffs in bar of the action and for costs. To reverse this judgment, plaintiffs appeal.

Appellants contended in the trial court and insist in this court that the evidence establishes that appellee is not a charitable organization, but is a fraternal benefit society and that its charitable activities are merely incidental. Counsel for appellee insists that it is a charitable organization and devoted to charitable purposes and that the evidence so shows.

The evidence discloses that the Sovereign Grand Lodge of the Independent Order of Odd Fellows is the supreme authority of this organization and that appellee is subject to all rules and regulations of the Sovereign Grand Lodge. A charter having been granted by the Sovereign Grand Lodge to the Grand Lodge of this State, our General Assembly by a Special Act entitled: "An Act for the Incorporation of the Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows and the Subordinate Lodges thereunto belonging," approved February 8, 1849, declared appellee to be a community corporation. In part, this Act is as follows:

"Sec. 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly that Charles H. Constable, F. Scammon, John M. Law (and eight other named persons), the present officers in the Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows, and their successors, be, and they are hereby declared to be a community corporation and body politic by the name and style of the Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows and by that name they and their successors shall and may at all times hereafter be capable in law to have, receive and retain to them and to their successors, property, real and personal, also devises or bequests of any person or persons, bodies corporate or politic, capable of making

4

the same, and the same, at their pleasure, to transfer or dispose of in such manner as they may think proper, provided always that the said corporation or body politic shall not at any time hold or possess property, real, personal or mixed, exceeding in annual value the sum of twenty thousand dollars.

"Sec. 4. That the Subordinate Lodges which are now belonging to and which may hereafter be instituted by the said corporation and their successors by the name and number of their respective Lodges of the Independent Order of Odd Fellows, in the State of Illinois, shall be declared to be a community corporation and body politic and to be at all times hereafter capable in law to have, receive and retain to them and their successors property, real and personal, also devises or bequests of any person, or persons, bodies, corporate or politic, capable of making the same and the same at their pleasure to transfer or dispose of in such manner as they may think proper, provided, always, that either of the said Subordinate Lodges shall not, at any time, hold or possess property, real or mixed, exceeding in annual value the sum of ten thousand dollars."

Subsequently the General Assembly of this State passed the following Act, which was duly approved on February 16, 1865: "An Act to amend an Act entitled, 'An Act for the incorporation of the Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows and the Subordinate Lodges thereunto belonging.'

"Section 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly: That said corporation and each of said Subordinate Lodges shall have power to loan money belonging to the same, respectively, and take promissory note or other evidences of debt for the money so loaned or any property sold which may be recovered in the

5

corporate name aforesaid in all courts or places where judicial proceedings are had. Section 2. In case any Subordinate Lodge under the jurisdiction of said Grand Lodge shall cease to exist or forfeit its charter, then all the estate, real and personal, together with all the records, books, papers, vouchers, furniture, jewels, seals and fixtures belonging to such Lodge shall immediately vest in said Grand Lodge. And all personal property, books, records, papers, vouchers, jewels, seals, furniture, deed money, evidences of debt, leases or mortgages belonging to said Lodge so forfeiting its Charter or ceasing to exist shall be delivered over by its last secretary, treasurer, or trustees of the same or other person or persons having custody of them, to the proper officer or agent of said Grand Lodge, on demand. And the person or persons holding or having in their possession such funds or property failing to do this, each and every such person shall be liable to the said Grand Lodge in an action of debt for the value of the same.

"Section 3. This Act shall be deemed a Public Act, and take effect and be in force from and after its passage."

Thereafter, on June 2, 1911, the following statute was passed (Ill. Rev. Stat. 1947, Chap. 32, par. 389) [Jones Ill. Stats. Ann. 66.602] :

"An Act to enable fraternal and benevolent societies incorporated by special Acts of the General Assembly to take and hold property and borrow money needful and proper to serve and accomplish the purposes of their organization to the same extent as similar societies incorporated not for pecuniary profit under the general incorporation laws of this State."

"Section 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly: That in any case where any fraternal or benevolent society or association has been incorporated by any

special Act of the General Assembly of Illinois, and where in the special Act under which the same is incorporated or in any amendment thereto there is any limitation as to the amount of value of real estate or personal property which such incorporated body or any of its constituent or subordinate bodies may hold or any limitation as to the amount of money which such fraternal or benevolent society or association may borrow, that notwithstanding any such limitation, such incorporated body or any of its constituent or subordinate bodies may hold real or personal property and may borrow money of whatever amount or value may be needful, suitable and proper to serve and accomplish the purpose of its organization, and to provide for them, respectively, suitable places of meeting and entertainment and accommodations for their officers and members to the same extent that societies for similar purposes and organized not for pecuniary profit under the general incorporation laws of the state may own and hold property both real and personal.''

Article XVII of the Insurance Code of 1937 has to do with Fraternal Benefit Societies (Ill. Rev. Stat. 1949, chap. 73, pars. 894–927 [Jones Ill. Stats. Ann. 66.957–66.990]), and paragraph 926 [Jones Ill. Stats. Ann. 66.989] declares a fraternal benefit society organized under the Code to be a charitable and benevolent institution and that all of its funds shall be exempt from taxation other than from taxes on real estate and office equipment. Paragraph 920 [Jones Ill. Stats. Ann. 66.983] of the same Act provides that the article shall not apply to grand or subordinate lodges of orders which provide benefits exclusively through local or subordinate lodges.

The evidence in the instant case discloses that there are four hundred and seventy-six subordinate Odd Fellow Lodges in Illinois having a combined member-

7

ship of thirty-six or thirty-seven thousand. Each of these subordinate lodges is a separate corporation organized under a special act of the General Assembly of this state. The defendant Grand Lodge and these subordinate lodges are under the jurisdiction of the Sovereign Grand Lodge and the membership of the Grand Lodge is made up of representatives of these four hundred seventy-six subordinate Illinois lodges. There was established in 1889 the Odd Fellows Orphans' Home at Lincoln where more than fifty children are cared for and an Old Folks' Home at Mattoon where more than one hundred men and women are living and receiving their maintenance. These institutions are duly incorporated under the laws of the State and managed by their own boards of trustees. The income of the defendant is derived from gifts, and also from a *per capita* tax and a "Home Tax Fund" which the membership of the several subordinate lodges are required to pay.

A beneficial membership in a subordinate lodge entitles the member to sick and death benefits and a nonbeneficial membership does not, but all members are required to pay the home tax and dues. There is also a noncontributing membership for older persons unable to pay dues.

The income received goes into the general fund of appellee. The Home Tax Fund is collected from each member of each subordinate lodge and is used solely and exclusively for the support and maintenance of the homes at Lincoln and Mattoon.

It further appears from the evidence that appellee owns the Grand Lodge building in Springfield and that it pays no taxes of any kind and has been exempted from paying any income tax and from paying any Federal gift or inheritance taxes. The Grand Lodge also has title to real estate taken over from the dis-

8

solution of subordinate lodges at New Berlin, Golden, and Waynesville.

The powers of defendant Lodge as provided in its constitution are to grant dispensations to established lodges, to charter lodges, to suspend or discontinue any lodge subordinate to it, to redress grievances of members and lodges under its jurisdiction and to do whatever is proper according to the usages of Odd Fellowship and not in contravention of its constitution or of the constitution and laws of the Sovereign Grand Lodge. The constitution enumerates the officers of the lodge and the several committees and defines their respective duties and provides how such officers and committees are elected or appointed. It provides for annual sessions of the lodge and special sessions at the call of the grand master and provides that every subordinate lodge shall pay to the Grand Lodge such capitation tax as may, from year to year, or by the by-laws of the Grand Lodge, be determined.

The constitution further provides that the Grand Lodge shall create, maintain and disburse an Aged Odd Fellows' Fund and outlines the method to be followed in so doing and defines the beneficiaries of that fund. This fund is created from the assets of subordinate lodges which have surrendered their charters and is held in trust for the benefit of members of the lodges whose charters have been surrendered. When the fund exceeds $3,000 it is transferred to the General Fund.

There are also separate endowment funds for the Old Folks' Home at Mattoon and the Orphans' Home at Lincoln, the income of which is available for the support and maintenance of the respective homes.

In the event of general calamity or periods of wide-spread distress, its General Relief Committee may use funds for relief of immediate distress and suffering

without confining the beneficiaries to members of the Order.

The evidence also shows that the primary principles and teachings of the Order are to visit the sick, relieve distress, bury the dead, educate the orphan and care for the aged and needy. The general laws of the Sovereign Grand Lodge state similar principles in stating the purposes of the Rebekah branch for women. They state like ideals for the Theta Rho Girls Club and the Young Odd Fellows Clubs of the Order.

The evidence discloses that while the subordinate lodges do provide sickness and death benefits for their members and their activities are regulated by the Grand Lodge, the Grand Lodge itself does not and cannot pay any benefits to its members except where a subordinate lodge surrenders its charter, in which case the Grand Lodge takes over its assets in trust and uses them to pay any benefits owed by the defunct subordinate lodge and if there is any balance it is used not to pay benefits but for the general purposes of the Order.

The laws of the Order offered and admitted in evidence upon the hearing expressly provide that ''Grand Lodges have no authority, directly or indirectly, to pay, from their funds any sick, funeral or other benefits,'' and it also expressly provided ''that funds collected by Grand Lodge and its subordinate lodges, are trust funds and can be used only for the purposes for which they are collected'' and no member of the Grand Lodge can directly, by reason of his membership therein, receive any payment or benefit, and upon its dissolution all of its funds must be paid, not to its members, but turned over to the Sovereign Grand Lodge to be held in trust and disbursed for the purpose for which the fund was created. It further appears from the evidence that none of the officers of appellee except the Grand Secretary and Grand Treasurer is

10

paid a salary. All the other officers of appellee, as well as the members of the board of trustees of the Orphans' Home and of the Old Folks' Home and the officers of the subordinate lodges all serve without compensation, giving freely of their time and abilities to further the purposes of their organization.

The court in *People v. Young Men's Christian Association of Chicago,* 365 Ill. 118, involving the exemption from taxation of the personal property of the Young Men's Christian Association, located in its hotel in Chicago, held that the association was a charitable organization engaged in charitable work and in defining a charity at page 122, said: " 'Charity,' in law, is not confined to the relief of poverty or distress or to mere almsgiving but embraces the improvement and promotion of the happiness of man. A charity is a gift to the general public use which extends to the rich as well as to the poor. The principal and distinctive features of a charitable organization are that it has no capital stock and no provision for making dividends or profits for private gain. It derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter. The charitable nature of an organization depends upon whether its object is to carry out a purpose recognized in law as charitable, or whether it is maintained for gain, profit or private advantage. An institution does not lose its charitable character by reason of the fact that the recipients of its benefits who are able to pay are required to do so, where no profit is made by the institution and the amounts so received are applied in furthering its charitable purposes and those benefits are refused to none on account of inability to pay therefor. The reason for exemptions in favor of charitable institutions is the benefit conferred upon the public by them, and a consequent relief, to some extent, of the burden

11

upon the State to care for and advance the interests of its citizens. (*Congregational Publishing Society v. Board of Review*, 290 Ill. 108, 112, 113; *School of Domestic Art and Sciences v. Carr*, 322 id. 562, and cases there cited.)''

The Grand Lodge of Masons is similar in many respects to appellee and like it maintains a home for widows and orphans. In the case of *Grand Lodge A. F. & A. M. v. Moultrie Co. Board of Review*, 281 Ill. 480, the court stated that it had been quite uniformly held by the courts that the primary objects of a Masonic lodge, being benevolence and charity, such a lodge is a charitable institution. The court then said: ''That the Masonic Home is a charitable institution and that the property in question is devoted to charity is beyond question and is not denied, but the objection made before the board of review and now insisted upon is, that the home is not a public charity because its benefits are restricted to Master Masons, their widows and orphans, and that such limitation deprives the institution of the character of a public charity.'' And in holding that the Masonic Home at Sullivan was a public charity even though limited to Masons, said at pages 484–5: ''It is the duty of the public to care for the indigent and the poor who are sick and afflicted, and while the public burden is not for the relief of aged and indigent Masons as such, the public is not relieved from the burden because they are Masons, and any institution which serves no selfish interest, but discharges, in whole or in part, any such duty, is a public charity. . . . A public charity cannot be limited to defined individuals, but if it operates upon indefinite persons whose care and support rest upon the public the effect is to afford relief from the public burden and the charity is public in its nature. The Masonic Home is a public charity.''

12

In *People v. Rockford Masonic Temple Bldg. Ass'n,* 348 Ill. 567, the court held that a corporation, formed for the mutual benefit and social intercourse of its members, owning the building which was used by several branches of Masonic Order was not a charity and that its use was not a charitable use.

In *People v. Dixon Masonic Bldg. Ass'n,* 348 Ill. 593, the court held that property used for holding meetings of affiliated Masonic organizations and others was not used for charitable purposes so as to make it exempt from taxation, and at page 596 the court said:

"The statement of facts in this case discloses a situation almost identical with that involved in *People v. Rockford Masonic Temple Building Ass'n, ante,* p. 567. In that case we held that even though a masonic lodge has public benevolence and charity for its primary purposes, its property is not exempt from taxation unless it is used actually and exclusively for such purposes. The use to which property is put, and not the character of the organization which owns it, determines the question of tax exemption. A charitable organization may own property which is exempt and it may own other property which is not exempt from taxation. A farm, with buildings used exclusively for the support of dependent Master Masons, their widows and orphans is exempt from taxation. (*Grand Lodge v. Board of Review,* 281 Ill. 480,) but a building used primarily for social or fraternal purposes or for lodge meetings for the conduct of ritualistic work is not exempt from taxation. (*People v. Rockford Masonic Temple Building Ass'n, supra; People v. Rockford Lodge B. P. O. E., ante,* p. 528.) The use of the premises of appellants is of the latter character."

In *Heiskell v. Chickasaw Lodge, No. 8, Independent Order of Odd Fellows,* 87 Tenn. 668, 4 L. R. A. 699, it appeared that Grand Lodge of the Independent

13

Order of Odd Fellows of the State of Tennessee was incorporated under an act of the legislature of that state in 1846. The following year the Act was amended so that whenever the Grand Lodge established or chartered a subordinate lodge, the subordinate lodge was invested with the right to hold property not exceeding the sum of $10,000. It further appeared that under the will of Addie B. Howell, Chickasaw Lodge No. 8, Independent Order of Odd Fellows was bequeathed the "proceeds of my $2,000 Union and Planter's Insurance Company stock, the dividends for said stock to be used by said lodge for the benefit of the widows and orphans." In holding that the defendant was a subordinate lodge created by the Grand Lodge and a quasi-private corporation the court distinguished the defendant from a voluntary organization and stated that the life and harmony of the order depended upon judicious care in constituting subordinate lodges. The court then held that the purposes of the defendant were benevolent and not for private gain, that the bequest was for a definite charity and then continued: "It is a matter of general knowledge that one of the objects of this order is to take care of the widows and orphans of its deceased members. It is in proof that this fact was known to the testatrix. The constitution of the order is in evidence, and shows that the care of widows and orphans is one of its special functions."

In the case of *In re Watkins Estate,* 118 Misc. 645, 194 N. Y. S. 342, a bequest to a subordinate lodge of the Independent Order of Odd Fellows as one to a charitable and benevolent organization was sustained. The court mentioned the good work accomplished by the Independent Order of Odd Fellows, their homes for aged members and their activities in disasters. The court distinguished the cases involving taxes on

14

buildings of lodges and held that the defendant subordinate lodge was a benevolent and charitable organization, and at p. 346 said: "As to being a charitable organization: It is contended that, legally, it is not charity, where benevolence begins and ends at home and is largely a matter of contract. The sick and accident benefits, as provided for in the by-laws, do partake of an insurance nature. But assistance does not necessarily end there; indigent members or their families have been either paid money in addition to the 'contract' sum or received other assistance, such as furnishing men to watch over the sick, for which the lodge has paid, assistance rendered in great catastrophies, and the building and maintaining homes for the aged. While each subordinate lodge may be a separate legal entity, all are more or less closely connected through the grand lodges of the states and the Sovereign Grand Lodge of the World. That their charity 'begins and ends at home' really loses significance in face of the fact that there (are) a great number of lodges over practically the whole world having a very large membership."

*State Council of Catholic Knights v. Effingham County Board of Review,* 198 Ill. 441 and *Supreme Lodge v. Effingham County Board of Review,* 223 Ill. 54 involved the taxation of funds of societies organized under a different statute involving fraternal benefit societies. *People v. Rockford Lodge No. 64, B. P. O. E.,* 348 Ill. 528 and *Turnverein "Lincoln" v. Cook County Board of Appeals,* 358 Ill. 135, involved buildings not entirely used for charitable purposes. Appellee is entirely different from the Springfield Motor Boat Club held noncharitable in *Halbert v. Springfield Motor Boat Club,* 342 Ill. App. 685. It is also very different from fraternal benefit societies organized under the general Act whose primary function is to furnish insurance of various kinds.

15

■ While the Grand Lodge has supervision of the subordinate lodges in the matter of fraternal benefits to see that they conform to the principles of Odd Fellowship, its primary function is to promote those principles. Like the Grand Lodge of the Masons, it is primarily a charitable organization. Appellee is designated as a community corporation by the special Act incorporating it. Under the evidence in this record and the foregoing authorities, we hold that appellee is a charitable corporation.

Since we have determined that the appellee is a charitable corporation, the next question to be considered is what is its liability for torts committed by its agents.

In *Parks v. The Northwestern University*, 218 Ill. 381, 75 N. E. 991; 2 L. R. A. (N. S.) 556, the declaration charged that the plaintiff, a student at Northwestern University, received injuries in the dental chemical laboratory of the University while pursuing his studies, which resulted in the loss of an eye through the negligence of one of the professors employed by the University. A demurrer to the declaration was sustained. The defense interposed was that the charter of the University provided that it shall hold the property of the institution solely for the purpose of education and therefore it was a charitable institution, and the doctrine that the employer shall be liable to respond for the negligent act of the employee had no application. In sustaining this defense the Supreme Court quoted with approval from 5 *Am. and Eng. Ency. of Law* (2d ed.) 923 to the effect that the doctrine of *respondeat superior* does not extend to charitable institutions for the reasons, "first, that if this liability were admitted the trust fund might be wholly destroyed and diverted from the purpose for which it was given, thus thwarting the donor's intent, as a result of negligence for which he was in nowise responsible; second,

that since the trustees cannot divert the funds by their direct act from the purposes for which they were donated, such funds cannot be indirectly diverted by the tortious or negligent acts of the managers of the funds or their agents or employees." The court then continued at pages 384–5: "These reasons for exemption apply as well to private as to public charitable corporations.

"The appellee University is a private corporation but is organized for purely charitable purposes. It declares no dividends and has no power to do so. It depends upon the income from its property and the endowments and gifts of benevolent persons for funds to carry out the sole object for which it was created—the dissemination of learning. Its charter secures to all persons of good moral character who have made sufficient preliminary advancement the benefits of the University and all of its funds and property, from whatever source derived, are held in trust by it to be applied in furtherance of the purpose of its organization and increasing its benefits to the public. The funds and property thus acquired are held in trust, and cannot be diverted to the purpose of paying damages for injuries caused by the negligent or wrongful acts of its servants and employees to persons who are enjoying the benefit of the charity. An institution of this character, doing charitable work of great benefit to the public without profit, and depending upon gifts, donations, legacies and bequests made by charitable persons for the successful accomplishment of its beneficial purposes, is not to be hampered in the acquisition of property and funds from those wishing to contribute and assist in the charitable work, by any doubt that might arise in the minds of such intending donors as to whether the funds supplied by them will be applied to the purposes for which they intended to devote them, or diverted to the entirely different purpose of

17

■■■■■■■■■

■■■■■■■■■

satisfying judgments recovered against the donee because of the negligent acts of those employed to carry the beneficent purpose into execution. That the appellee, though a private and not a public corporation, being a purely charitable institution, is not answerable for the negligent acts of its employees, is held but with little diversity of opinion.''

The liability of charitable organizations for their torts on the basis of *respondeat superior* is fully considered by the Supreme Court in the recent case of *Moore v. Moyle,* 405 Ill. 555. In that case the Bradley Polytechnic Institute was sued by a student who was injured using a trapeze in the gymnasium. The complaint as amended alleged that the defendant Bradley Polytechnic Institute was fully insured against the risk involved in the case and that it had other nontrust funds from which judgment could be satisfied and that if judgment was obtained it could be satisfied without impairing or diminishing any funds held by it in trust for charitable purposes. A motion to dismiss was filed by the defendant Bradley Polytechnic Institute averring that it was a charitable corporation and therefore not liable for the torts of its agents. The opinion of the Supreme Court contains an exhaustive discussion of the cases on the subject and quoted from *Parks v. Northwestern University,* 218 Ill. 381, at pages 559–560, as follows: ''An examination of the *Parks* case reveals that the sole object of the doctrine there announced was to protect the trust funds of charities from depletion through the tortious conduct of their employees and agents. The only subsequent case in which the court passed squarely on the doctrine was *Hogan v. Chicago Lying-in Hospital,* 335 Ill. 42. In that case the court did not enlarge upon the doctrine, nor was there any insurance or other nontrust fund of the charity involved. The only effect of that case was to reaffirm the doctrine of the *Parks* case.

18

We must, therefore, first determine whether the exemption granted to charities in Illinois is absolute and the solution of that question would seem to rest solely in the decisions of this court.

"The holding in the *Parks* case clearly exempts the trust funds of a charity from any liability for the torts of its agents and employees. However, the immunity granted does not impose a disability to be sued in tort upon the charity and may be waived. (*Marabia v. Mary Thompson Hospital*, 309 Ill. 147.)"

The court held that the doctrine of immunity is available as a complete defense of trust funds against depletion by suits in tort and stated that the *Parks* case seems to have provided a defense but did not destroy the right of action. The court further held that the decision in the *Parks* case extends immunity to all funds held in trust for the charitable purposes of the charity but stated that in no case has the question whether nontrust funds of the charity are or are not protected been presented to the Supreme Court. After discussing various cases on the subject, the court said at pages 563–4: "As to the contention that this court should wholly repudiate the holding in the *Parks* case, it is apparent that the decision there is in harmony with the weight of authority in this country, was based upon adequate reasons of public policy and principles governing trust funds and has been firmly adopted in Illinois after full consideration of the contrary rule. No compelling reason is shown for abandonment of the rule now. Appellee strenuously argues that the doctrine of the *Parks* case is *stare decisis* in Illinois. It seems sufficient answer to say that the question of whether nontrust funds of a charitable corporation are exempt from tort liability is here for the first time. We do not feel we are here overruling or changing the *Parks* case, but, instead, are properly extending the rule there announced. It is necessary to review the

19

effect of the decision in that case in the light of present day conditions and modern business practice and procedure. Times have changed, and are now changing, in the business, social, economic and legal worlds. It is fitting therefore, that the decision of the *Parks* case, handed down 44 years ago, should be re-examined in the light of modern concepts. Simply stated, the decision in the *Parks* case is merely that recovery is denied on the grounds of necessity for the protection of trust funds. In the amended complaint the plaintiff alleges, among other things, that the defendant, Bradley Polytechnic Institute, is fully insured against loss or damage sustained by reason of any judgment against it for damages and that the funds held in trust by it for charitable purposes will not be impaired or diminished directly or indirectly by the maintaining of the action. Extending the rule as announced in the *Parks* case, it would seem no violence is done to the decision there by allowing recovery, provided that trust funds or trust property are not subjected to the payment of any judgment obtained for tort liability.''

The court then stated that the liability of a charitable institution was not affected by the fact it was insured nor by the fact it held private nontrust property and concluded (pp. 565–6): "We are of the opinion that the exemption or immunity which has been afforded a charitable institution should go no further than to protect its trust funds from being taken to satisfy its liability for the tortious acts of its agents or servants. . . . We are of the opinion there is no justification for absolute immunity if the trust is protected, because that has been the reason for the rule of absolute immunity. Reason and justice require an extension of the rule in an attempt to inject some humanitarian principles into the abstract rule of absolute immunity. The law is not static and must follow and conform to changing conditions and new

20

trends in human relations to justify its existence as a servant and protector of the people and, when necessary, new remedies must be applied where none exist. From a careful analysis of the many cases, we are of the opinion that the law in Illinois is that the trust funds of charitable corporations are immune from liability for the torts of the corporation's employees and agents. Beyond that, the rule of *respondeat superior* is in effect. It appears that the trust funds of Bradley will not be impaired or depleted by the prosecution of the complaint, and therefore it was error to dismiss it.''

The court in *Moore v. Moyle, supra,* declares the holding in the *Parks* case that trust funds of a charitable institution cannot be taken to satisfy its liability for the tortious acts of its agents and servants is still the law but that since the pleadings in that case showed that the trust funds of the Bradley Polytechnic Institute would not be impaired or depleted by the prosecution of the complaint, it was error to dismiss the case. The court stated that the fact that whether a charitable institution was or was not insured or has in its possession nontrust property or funds does not affect its liability and that the exemption goes no further than to protect the trust funds of the institution from being taken to satisfy its liability for the tortious acts of its agents or servants. If a judgment be taken against a charitable institution, such a judgment cannot be enforced against the trust funds of the institution.

In the case at bar, the appellee answered and in its answer made the defense that it was a charitable organization organized under a special act of the legislature, that all of its objects and service was wholly charitable and as such it was not liable in anywise for the torts of its servants.

On the trial of the case there was introduced in evidence the charter issued by the Sovereign Grand Lodge to the Grand Lodge of the State of Illinois, the constitution and the code of general laws of the Sovereign Grand Lodge and the constitution and by-laws of the Grand Lodge of the State of Illinois, and the Grand Secretary testified as to the funds of the Grand Lodge. The general laws of the Sovereign Grand Lodge with reference to funds of the Order provide that funds collected by the Grand Lodge are declared to be trust funds to be expended only for the purposes for which they are collected. The Grand Lodge cannot appropriate or set apart any funds belonging to it for any purpose not directly connected with and contributing to the advancement of the interest of the Order. The Grand Lodge may expend funds for such purposes as are contemplated by the laws and usages of the Order. It may make donations for emergencies but has no power directly or indirectly to pay from its funds sick, funeral or other benefits. It may create a General Relief Fund for the relief of temporary distress and immediate needs of unfortunate members of the Fraternity, their widows and dependents, and in the event of a general calamity or widespread distress the General Relief Committee may use funds for the relief of immediate distress without confining the beneficiaries to members of the Order.

The Grand Lodge has power to establish a home for aged and indigent Odd Fellows, for widows of deceased Odd Fellows and for the care, protection and education of orphans of deceased Odd Fellows, to appropriate from the general fund and levy assessments for their support and to create endowment funds.

The constitution of the Grand Lodge of Illinois provides that the Grand Lodge shall create, maintain and disburse the Aged Odd Fellows Fund. This fund

is created from the assets of the subordinate lodges whose charters have been surrendered and benefits to members of lodges whose charter has been surrendered are paid from it.

The constitution provides that the Grand Lodge shall receive a capitation tax for its expenses and for the purposes of the Order. Endowment funds are provided for the homes. A home tax is also collected from the members for the maintenance, extensions to and repairs upon the homes. This tax is paid to the Grand Lodge and used by it for the home.

██ All the funds of the Grand Lodge are described as trust funds. The various special funds for special purposes and the endowment funds for the Homes are without question trust funds. The Home Tax Fund though raised by assessments is a trust fund devoted to the support and maintenance of the homes. Counsel for appellants admit that it is a trust fund but argue that because it is raised by assessments it is not a charitable trust fund. The evidence shows that where the Orphans Home is not needed for children of deceased Odd Fellows, children of non-Odd Fellows are admitted, including those who are wards of the court upon payment of $25 per month. It is our opinion that the Home Tax Fund is a charitable trust fund.

The Aged Odd Fellows Fund consists of funds from subordinate lodges which have surrendered their charters and is held in trust for the members of such subordinate lodges. When the fund exceeds $3,000, it is transferred to the General Fund. This fund is a trust fund for its aged members where their subordinate lodge no longer exists. If the fund is not so used it goes to the General Fund for the general charitable purposes of the Order. The real estate in New Berlin, Golden and Wayneville is from this source and, hence, is held in trust for charitable purposes.

■ The capitation tax is to pay the cost of administration of the Grand Lodge. The proceeds of the capitation tax is therefore a trust fund of the appellee to pay its expenses of administration. It was never contemplated in the *Parks* case, *supra,* or in *Moore v. Moyle, supra,* that funds for the actual administration expenses of charitable enterprises were not trust funds. Funds used for the operation of a charitable enterprise are trust funds for that purpose.

The General Fund of the Grand Lodge is declared to be a trust fund. It cannot be used for any purpose not connected with and contributing to the advancement of the interests of the Order. It must be used for such purposes as are contemplated by the laws and usages of the Order. It cannot be used to pay sick, funeral or other benefits. Upon the dissolution of the Grand Lodge, all of its funds must be paid, not to its members, but turned over to the Sovereign Grand Lodge to be held by it in trust and disbursed for the purposes for which the funds were created.

■ The appellee pleaded in its answer the defense that it was a charitable organization, that all its objects and service were wholly charitable and as such it was not liable for the torts of any of its agents and servants. The facts with reference to the funds of appellee were brought out in the evidence presented at the trial. The record in this case shows that appellee is a charitable organization and that all of the funds of the Grand Lodge of the State of Illinois of the Independent Order of Odd Fellows are trust funds devoted to the purposes of the Independent Order of Odd Fellows. This brings the case within the rule of the *Parks* case that the trust funds of a charitable institution must be protected. *Moore v. Moyle, supra,* does not overrule the *Parks* case, but reaffirms the principles laid down in it. The trial court therefore

24

properly entered judgment for the defendant notwithstanding the verdict and that judgment must be affirmed.

In view of this conclusion, it is unnecessary to consider the other errors relied upon or the assigned cross-errors.

The judgment of the circuit court of Henry county is affirmed.

*Judgment affirmed.*