## SOUTHWESTERN OSTEOPATHIC SANITARIUM v. DAVIS, Co. Treas.

No. 16069—Opinion Filed Jan. 12, 1926.

**1. Taxation—Exemption of Property Used for Scientific and Charitable Purposes.**

In determining whether property claimed to be used exclusively for educational, scientific, and charitable purposes is exempt from taxation, each case must stand upon its own merits, and the use to which the property is in fact dedicated is the test as to whether such property is exempt from taxation, and such use is a question of fact to be determined from the evidence.

**2. Same—Land of Osteopathic Sanitarium Not Exempt.**

Record examined, and held, the evidence wholly fails to prove the lands subjected to taxation as in the petition alleged fall within the exemption provided by section 6, art. 10 of the Constitution of the state of Oklahoma, and section 9575, Comp. St. 1921.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Kay County; Claud Duval, Judge.

Action by the Southwestern Osteopathic Sanitarium against Coe Davis, County Treasurer. Judgment for defendant, and plaintiff appeals. Affirmed.

J. E. Curran, for plaintiff in error.

Roy R. Carver and Howard F. Wilson, for defendant in error.

Opinion by RUTH, C. The parties hereto will be designated as they appeared in the trial court. Plaintiff filed three separate actions to recover taxes paid under protest on three separate occasions, and the causes were consolidated by consent, in the district court. It is alleged plaintiff was incorporated as a scientific and educational corporation under the laws of the state of Oklahoma, for the care of patients and for the scientific study and improvement of present day methods of diagnosis and treatment, and is a nonprofit organization, and has no capital stock. After issue joined, judgment was rendered for defendant, and plaintiff appeals, and brings this cause here for review upon petition in error and casemade.

Plaintiff bases its right to exemption from taxation on section 9575, Comp. Stat. 1921, which provides as follows:

"The following property shall be exempt from taxation: Second. All property and morgtages on same used exclusively for religious or charitable purposes. Tenth. All property, both real and personal, of scientific, educational and benevolent institutions, colleges or societies, devoted solely to the appropriate objects of these institutions. Eleventh. The books, papers, furniture scientific or other apparatus pertaining to the above institutions and used solely for the purpose above contemplated (and the like property of students in any such institutions used for the purpose of their education)."

A somewhat similar question as here presented, was presented to this court very recently, to which reference is hereinafter made.

In the instant case Dr. H. C. Wallace, superintendent and treasurer of the corporation, was the only witness called for plaintiff. Defendant introduced no testimony. The witness testified plaintiff was "incorporated not for profit"; that it took all cases except contagious diseases and mental cases; that parties who are able to pay are required to pay, but it takes those who cannot pay; that those who cannot pay, or "charity patients," constitute about ten or fifteen per centum of the total; that there is paid into the corporation by patients from $25,000 to $31,000 per year for hospital services; that this does not include physicians' charges to patients they bring to and treat at the hospital; that the money so received is used in paying the running expenses of the institution; that no shares of stock are issued, but "trustees' certificates" are issued to those having an interest in the institution, and these trustees, certificates amount to $3,000 or $4,000; that witness owns $1,500 worth; Dr. Conley owns $1,500 worth; Dr. Braun "a couple of hundred"; Dr. Tillman "three or four hundred"; and Dr. Ball $50; that they have a training school for nurses; that they pay these nurses from $5 to $10 per month, and give them room and board, and the nurses look after the patients; that if there is any surplus after paying maintenance and operating expenses, it goes to enlarging the institution, and if the corporation were dissolved, the proceeds of the sale of its property would be distributed among the certificate holders in proportion to their shares; that the advantage the doctors get is the indirect advantage of having a convenient and well-equipped hospital, and that they are able to do more work by having the hospital. It was further testified that work was done "in the nature of research and gastrointestinal diseases by means of X-ray diagnosis"; that physicians "give their services free" to the nurses' training school, and the county pays for all patients the commissioners send to the hospital.

The following questions were asked and answers given:

"Q. Have you recently sold this hospital and grounds? A. Yes, sir. Q. $50,-000? A. $25,000. Q. What was done with this money? A. It has not been collected, but I presume it will be divided in proportion, with the people who put money into it. No one will get the money back they put in."

The cause was tried in April, 1924, and the evidence of the witness discloses the corporation has been taking in as hospital fees from $25,000 to $31,000 per annum, exclusive of physicians' fees, since its incorporation in 1919, and as the plaintiff introduces no testimony to show the cost of maintenance, or what the original sum invested was, except that there has been issued between $3,000 and $4,000 worth of trustees' certificates, held by the physicians as heretofore set forth, $3,000 of which is held by witness and Dr. Conley, we are not able to say, in view of the state of the record, that there would be any loss, but, on the other hand, it would appear that an institution showing this increase in value is very successful, and should show a substantial profit on the investment.

Plaintiff cites 37 Cyc. 926-929 and 930, where it is said in part:

"Exemption from taxation is usually granted by statute or Constitution, to the property of charitable organizations or institutions of 'purely public charity,' and this does not necessarily mean an institution solely controlled and administered by the state, but includes private institutions for the purposes of public charity which are not administered for private gain. * * * Nor is it necessary, to constitute a public charity, that it should be universal. * * * A public hospital is a charitable institution, or under some statutes, an almshouse, so as to be exempt from taxation; but not so if it is entirely self-supporting or is conducted for private gain, or as an adjunct to a medical college, or is private in the sense that the public have no right of admission to it. But it is none the less a public charity because patients of sufficient pecuniary ability are required to pay for what they receive, if the proceeds are applied exclusively to the purposes of the institution, and if indigent patients are treated wthout charge, because it is not owned by the state or a municipal corporation," etc.

Plaintiff cites opinions from the courts of other states, and we are in accord with the general rules therein laid down, and no doubt these opinions are according to the Constitutions and laws of such states, as those courts, as well as this court, must be guided and controlled by the state Constitution and laws.

This court in Beta Theta Pi Corporation v. Board of County Commissioners of Cleveland County, 108 Okla. 78, 234 Pac. 354, said:

"Under section 6, art. 10 of the Constitution, the 'use' to which property is in fact dedicated is the test as to whether such property is exempt from taxation and such 'use' is a question of fact to be determined from the evidence."

In Y. M. C. A. of Omaha v. County of Douglas, 60 Neb. 642, it is said:

"Statutes providing for exemption of prop-

erty from taxation when used for purposes therein mentioned, being an exception to the general rule of taxation and in derogation of the equal rights of all, are to be strictly construed.

In Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 425, it was said:

"The burden is on the party claiming the exemption to point to the law exempting him from taxation, and such law must be clear and unambiguous. Such statutes and constitutional provisions are construed with strictness and most strongly against those claiming the exemption."

In Washburn College v. Commissioners of Shawnee County, 8 Kan. 344, it is said:

"The accumulation of large amounts of untaxed property by educational, charitable, religious, and other institutions, is contrary to the fundamental rule requiring an equal rate of assessment and taxation; hence the Constitution makes 'exclusive use' and 'for a designated purpose' the test of exemption, not mere 'ownership' o. the property."

During the progress of the trial of the instant case, the following question was propounded and answer given:

"Q. This property referred to in these cases, block 1, block 3, and lots 1 to 8, inclusive, in block 4 in Highland Park addition to the city of Blackwell, was owned by the corporation? A. Yes, it was."

Nowhere in the petition is it alleged this particular land or any portion of it was used by the plaintiff for, or devoted to, any of the uses or purposes set forth in section 6, art. 10 of the Constitution, or in section 9575, C. O. S. 1921, and nowhere in the evidence is it disclosed that the particular land was used for or in connection with any educational, benevolent, or charitable work, and this court cannot determine from the record upon what land the hospital was constructed. So far as the record discloses, this hospital may have been operated on any one of the blocks mentioned, or on property far removed therefrom. The witness simply states the corporation owned this particular property, and it was subjected to taxation, and while this court might indulge the presumption that the hospital referred to in the testimony was located on some of this property, we are not at liberty to do so, for, following the rule announced in Washburn College v. County of Shawnee, supra, that the "Constitution makes exclusive use for a designated purpose the test of exemption and not mere ownership," we are constrained to hold that the plaintiff has wholly failed in its proof of such use as entitles it to exemption from taxation, and adhering to the rule announced by this

court in Beta Theta Pi v. Board of County Com'rs, supra, that the "use" is a question of fact to be determined from the evidence, and fully agreeing with that portion of the plaintiff's brief, wherein it is said "each case must stand on its own merits," we are of the opinion, from a careful examination of the whole record, that the plaintiff has not brought itself within the exemptions contained in section 6, art. 10 of the Constitution, or section 9575, C. O. S. 1921, and the judgment should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 37 Cyc. p. 892: anno 29 L. R. A. (N. S.) 190; L. R. A. 1917B, 782; 2 A. L. R. 471; 26 R. C. L. p. 318; 3 R. C. L. Supp. p. 1467. (2) 37 Cyc. p. 907.