In re FARMERS' UNION HOSPITAL ASS'N OF ELK CITY.

No. 30474.    March 31, 1942.

Rehearing Denied May 19, 1942.

Application for Leave to File Second Petition for Rehearing Denied June 9, 1942.

*126 P. 2d 244.*

William M. Franklin, of Oklahoma City, for protestant.

Jim Ted Robinson, County Atty., of Elk City, for respondent.

BAYLESS, J. Farmers' Union Hospital Association, a benevolent and charitable organization, petitioned the county excise board of Beckham county for an exemption of its property from ad valorem taxes, and when this was denied, appealed to the district court, and, when that court affirmed the ruling of the board, appealed to this court.

The plea for exemption was based in law on 18 O.S. 1941 § 581, reading:

"The following associations for benevolent and charitable purposes may become incorporated, . . . to wit: 1. To establish and maintain hospitals and infirmaries for the care of the sick. . . ."

—and on 68 O.S.A. § 23 (10) (§ 12319, O.S. 1931), enumerating the property exempt from taxation, including:

"All property, both real and personal, of . . . benevolent institutions . . . or societies, devoted solely to the appropriate objects of these institutions"

—and on the language of its articles of incorporation providing that the organization (1) was organized for benevolent and charitable purposes; (2) to operate and maintain hospitals; and (3) there should be no capital stock, no dividends should be paid and

"none of the profits, if any, shall inure to the benefit of the individual members thereof, but the profits, if any (after paying the necessary expenses of operation) shall be used for said charitable and benevolent purposes."

The testimony showed there had been a somewhat similar organization that was formed and operated for profit, and its members owned shares of stock of a par value of $50. The new nonprofit organization had been organized and had the same property and members, generally, but members now did not own stock but memberships that cost $50. The evidence showed that the organization was formed and exists and is operated primarily for the benefit of the members, although it receives and ministers to nonmembers. The evidence showed that members paid an annual fee, estimating the cost for the current year on past experience and future expectations, and this fee was relatively small per member. The evidence showed that nonmembers, who were entire strangers, paid the customary cost for service received, which was at a much higher rate than members; and that owners of memberships who were delinquent in annual fees received some adjustment or consideration by virtue of their status, thereby receiving service at less cost than nonmembers.

With respect to charity or benevolence, there is no evidence of any conscious effort to bestow those benefits on any person not connected with the organization. All that could be said in this respect was that some people received services for which they did not pay or for which the association was unable to collect. We think the testimony of the "secretary, treasurer, or organization and business manager," illustrates this aspect of the case. He testified that lots of free work was done, but that the benefits of the hospital service were derived by those who are members or who have been members, and their costs were on a co-operative basis.

This organization very generally makes an annual profit, and this profit is used to increase its facilities and to reduce the cost of service to its members for the following year. The official whose testimony we have just quoted stated, in answer to a question, that theoretically it was possible under the scheme of management to realize such a profit in one year as to be able to

furnish service to its members the following year at very little, if any, cost.

Association cites In re Beta Theta Pi, 108 Okla. 78, 234 P. 354; Board of Com'rs Garfield County v. Phillips University, 144 Okla. 57, 289 P. 720; State v. Bartlesville Lodge, 168 Okla. 416, 33 P. 2d 507; Board of Co. Com'rs, Tulsa County, v. Sisters of the Sorrowful Mother, 141 Okla. 32, 283 P. 984; and Sand Springs Home v. State, 168 Okla. 323, 32 P. 2d 928, and the citation of the text of 5 R.C.L. 374 and 26 R.C.L. 326, in support of its contention.

Beckham county relies upon the facts to differentiate this case from those cited by Association, and cites In re House of the Good Shepherd, 113 Neb. 489, 203 N.W. 632, and Corporation of Sisters of Mercy v. Lane County, 123 Ore. 144, 261 P. 694, and other cases that are found in Am. Dig. (West) Charities, 45 (2), and Taxation 241 (2).

We said in Southwestern Osteopathic Sanitarium v. Davis, 115 Okla. 296, 242 P. 1033, that the issue of whether property was exempt from taxation under such a plea depended upon the fact of whether it was actually used for the purposes claimed, and that each case must stand upon its own merits.

"Charitable" is defined in 14 C. J. S. 407, in its broader sense, as comprehending all kindly inclinations which men ought to bear toward one another, irrespective of class, conditions, and invidious distinctions. Words & Phrases, vol. 6, pp. 591 et seq. In 14 C.J.S. 411, § 1, "charity" is said to embrace the sense of benevolence, philanthropy, and good will, and good affections which men ought to bear toward mankind.

Specifically, a charity or charitable hospital is defined as one that is not maintained for gain, profit, or private advantage. 14 C.J.S. 422, § 2 (e), and many cases cited in the annotations, 61 C.J. 500, § 597 et seq.

It is generally said:

"The character of the institutions is to be determined, not alone by the powers of the corporations as defined by its charter, but also by the manner of conducting the hospital." Steward v. California Med., etc., Ass'n, 178 Cal. 418, 176 P. 46, and other cases found in Am. Dig., supra.

There is a wealth of these cases, and a variety of schemes of organizations and methods of operation, and many are held exempt and others not. In all of them there is one factor the presence or absence of which means almost more than anything else in determining the issue. That is this: Are the doors of the hospital open to all, poor patients and pay patients alike? If the answer is yes, it is a charitable hospital and its property is entitled to the exemption from taxation provided; if the answer is no, it is not a charitable hospital and is not entitled to the exemption. Rogers Mem. San. v. Town, 228 Wis. 507, 279 N.W. 623; Steward v. Calif., etc., Ass'n, supra; Hallinan v. Prindle, 220 Cal. 46, 29 P. 2d 202; Baker v. Board of Trustees, 133 Cal. App. 243, 23 P. 2d 1071; Hamilton v. Carvallis Gen. Hosp. Ass'n, 146 Ore. 168, 30 P. 2d 9, and Tulsa Co. v. Sisters of the Sorrowful Mother, supra, and many other cases.

In this instance, this organization intended charity and benevolence, and private benefit and advantage to its membership, and no one else. Whatever service it dispensed for which it received no pay was accidental or incidental. Its officers very carefully refrained from saying that its doors were open to the world irrespective of ability to pay. A comparison of the evidence in this case and that of the case of the Sisters of the Sorrowful Mother, supra, suffices to illustrate the difference.

In speaking of private advantage as being a factor that precludes any organization from assuming the status of a charitable or benevolent institution, we mean private advantage to the organizers, and the supporters thereof. The fact that a profit is realized from the operation of a hospital does not condemn the scheme as noncharitable or nonbenevolent. It is the use to which the profit is put that means much. In

this case some of the profits are used to increase the facilities and some to the reduction of the cost to the members. This is a private advantage.

The members of the organization now appealing co-operated for their mutual advantage, but the record is bare of any evidence of an intent on their part to distribute charity or benevolence to any person not a member.

The judgment is affirmed.

CORN, V.C.J., and RILEY, OSBORN, GIBSON, DAVISON, and ARNOLD, JJ., concur. WELCH, C.J., and HURST, J., absent.