## LA SOCIETE FRANCAISE DE BIENFAISANCE MUTUELLE v. UNITED STATES.

### No. 22967–S.

District Court, N. D. California, S. D.

Oct. 3, 1944.

P. A. Bergerot and A. P. Dessouslavy, both of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Upon proper claim for refund plaintiff sues to recover $35,269.85 paid by it for taxes, interest and penalties assessed by defendant under Titles VIII and IX of the Social Security Act, approved August 14, 1935, 49 Stat. 620, 26 U.S.C.A. Int.Rev. Code, § 1400 et seq. The question for decision is whether the fact that plaintiff, a non-profit hospital, has paying members who receive medical, hospital, and other benefits from their membership, subjects plaintiff to Social Security taxes.

Plaintiff claims exemption from payment of the taxes as a charitable organization under Internal Revenue Code §§ 1426(b) (8), 26 U.S.C.A. Int. Rev. Code, § 1426(b) (8), relating to the old age pension, and 1607(c) (8), relating to unemployment insurance, each of which provides that the term "employment" does not include: "* * * Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Plaintiff society was founded in San Francisco in 1851 to treat the destitute sick. In 1856 it was incorporated under Chapter VIII of the California Corporation Act of 1850 "Relating to Religious and other Associations or Societies", California Stats. 1850, p. 373, and has continued its corporate existence thereunder. It operates a large general hospital known as the French Hospital which is open to the public, a home for elderly members to which they are admitted without charge or on a non-profit basis, and a nurses' training school accommodating 75 nurses. It also trains about six interns a year.

Plaintiff has no capital stock or shareholders. It has never paid dividends, interest, or sickness or death benefits. Defendant admits that plaintiff, under its by-laws, cannot pay a dividend out of its net earnings to anyone. Its directors and officers serve gratuitously. Since its inception plaintiff has received donations and bequests amounting to more than $360,000, and has received other substantial public support by way of subscriptions and loans. Any surplus from its operations is invested in the hospital plant or held in reserve for that purpose.

Plaintiff's income is derived in part from dues paid by members of its society. Requirements for membership (apart from health or age) are that applicant be of French birth or descent, or the member of the immediate family of a qualified member, or that he speak French. The last requirement is broadly construed. Plaintiff's membership is open, and it has about 9700 members. Monthly dues range from $1.00 a month for children to $1.75 for adults. Life memberships are sold for $1500. Members are entitled to receive medical and hospital care gratuitously in some instances and at a small charge in others. A fund has been established for the aid of destitute members.

Plaintiff maintains two free beds for non-members who are unable to pay for hospitalization, and gives free emergency treatment to personal injury cases arising in its neighborhood.

While there was no testimony produced at the trial with regard to taxes paid by San Francisco hospitals other than plaintiff, it is admitted by defendant that with the exception of plaintiff and several strictly proprietary hospitals, the San Francisco hospitals do not pay social security taxes to the United States; that while some of the hospitals which are not taxed are exempt under other provisions of the Act, such as those operated by churches or religious groups ("religious * * * purposes"), or in connection with and as an integral part of a medical school ("educational purposes"), or by a political subdivision of the state, Section 1607(c) (6), there are in fact five large hospitals open to the public, organized on a non-profit basis, which have none of the above exemptions and are not taxed.

Defendant states that the distinction between plaintiff and four of these hospitals is that plaintiff is composed of a society of members who own and operate the French Hospital "for mutual benefit," a factor which is probably not present in the other hospitals. As to the fifth hospital, it appears from plaintiff's reply brief that it is operated by a closed membership. Defendant states "We are not sufficiently informed as to the differences between that hospital and plaintiff to be able to distinguish them." The record is silent in this regard.

Plaintiff has all the attributes of a non-profit hospital, unless its character as such is changed by its membership plan. If so, it would follow that if other non-profit hospitals, not now subject to tax, should in the future adopt such a progressive and salutary plan, they would be penalized by the levy of social security taxes.

In 1937 the Deputy Commissioner of Internal Revenue notified plaintiff that it was exempt from payment of social security taxes. However in 1939 this ruling was reversed by the Acting Deputy Commissioner. The reason for the change does not appear.

As plaintiff states, the hospital cannot rely exclusively on irregular charitable donations. The periodical contributions of its members enable it to continue and expand its beneficial activities. The members receive in exchange a form of insurance against the large expense of serious illness. Depending on the state of his health, the individual member may never receive any benefit from his dues, other than a sense of security, or he may receive benefits in excess of the amount of money he has paid in. The members have no interest in the hospital plant and other assets of the society other than the right to use its facilities.

As authority that the fact that the individual members benefit by their membership does not prevent the hospital from being a charitable institution, plaintiff cites

United States v. Proprietors of Social Law Library, 1 Cir., 102 F.2d 481, 484. The facilities of the library were open to citizens of Boston who were willing to aid in its upkeep by becoming "proprietors" or "subscribers." Certain Federal officers were entitled to free use of the library. No part of the earnings of the corporation were paid to any shareholder, but were used to improve the facilities of the library. The Government attempted to impose a capital stock tax on the corporation, claiming that the net earnings inured to the benefit of the shareholders or individuals because any improvements rendering the library more serviceable to its members were of special benefit to them. The court said, "but though every improvement in a charitable institution confers additional benefits on those using it, or availing themselves of its benefits, such benefits have never been considered as taking the institution out of the class of charitable institutions because it has enabled it to do better educational, literary or charitable work, or because it resulted in distributing its benefits among private shareholders or individuals."

Following the same reasoning, the fact that the members benefit from the use of the hospital should not alter its character as a non-profit hospital. The members pay for the service they receive. The public, of course, pays higher rates for hospitalization than the members, for it has not contributed monthly payments to the hospital. But there is no showing that the members receive less costly treatment at the expense of the public, or that the amount of dues charged is not commensurate with the cost of treating the membership as a whole. The proof shows that in the eighty-seven years of its history, plaintiff has occasionally made a profit, has sometimes come out even, and has more often sustained a deficit. When profits are made or charitable donations received, both the membership and the public benefit by the improvements in hospital facilities made possible thereby.

In La Societe Francaise, etc., v. California Employment Commission, 56 Cal. App.2d 534, 133 P.2d 47, the California District Court of Appeal decided that this plaintiff was liable for state social security taxes. The court said it was unable to agree with appellant [plaintiff here] as to the view, purpose and intent of Congress that hospitals not operated for profit are charitable institutions. In support of its reasoning it cited the case of Hassett v. Associated Hospital Service Corporation, 1 Cir., 125 F.2d 611, 615. This case is discussed in defendant's brief in the case at bar. However, as counsel for defendant comments, the Associated Hospital Service Corporation did not own or operate a hospital, nor did it receive charitable donations. It contracted for medical and hospital care for its members in a number of hospitals. The Circuit Court of Appeals held that such an association is not a charitable organization and is liable for social security taxes. It discussed the Social Law Library case, supra, saying: "That case is distinguishable from the case at bar. While the facts in both cases are nearly the same, we feel that the plaintiff corporation is more akin to a business organization than the one involved in the Social Law Library case. There the corporate capital was composed in good part of charitable gifts, the payment of a fee was not prerequisite to the receipt of benefits in every case and the fee did not bear an exact relation to the cost of the benefit conferred."

Plaintiff has all the attributes of the Social Law Library which are mentioned as points of distinction between the Library case and the Hassett case. Charitable gifts compose a substantial portion of its capital; the payment of a fee is not prerequisite to the receipt of benefits in every case, for as above stated, the hospital gives free emergency treatment, maintains two free beds for non-members, and provides certain benefits for indigent members; the fee does not bear an exact relation to the cost of the benefits conferred, for being supported in part by charity, the hospital is enabled to maintain a better plant and render greater service to its members and the public than if it were wholly supported by private capital. Also, plaintiff's activities in training nurses and interns render it, at least in part, an educational institution.

Defendant cites In re Farmers' Union Hospital Ass'n of Elk City, 190 Okl. 661, 126 P.2d 244, in support of its argument that a hospital operated for the benefit of its membership is not operated for a charitable purpose. In that case the hospital generally made an annual profit which was used to increase its facilities and reduce the cost of service to its members for the following year. The court also found that no conscious effort was made to bestow char-

itable benefits upon any person not connected with the organization. Neither of these facts appear in the present case.

 The provisions of the Social Security Act exempting charitable organizations should be liberally construed. Hassett v. Associated Hospital Service Corporation, 1 Cir., 125 F.2d 611; United States v. Proprietors of Social Law Library, 1 Cir., 102 F.2d 481. Non-profit hospitals have frequently been held, for purposes of taxation, to be charitable institutions, although they receive paying patients, so long as a portion of their work is charitable. Commissioner of Internal Revenue v. Battlecreek, Inc., 5 Cir., 126 F.2d 405; In re Mendelsohn, 262 App.Div. 605, 31 N.Y.S.2d 435; In re Rust's Estate, 168 Wash. 344, 12 P.2d 396; New England Sanitarium v. Inhabitants of Stoneham, 205 Mass. 335, 91 N.E. 385; State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N.W. 469; Virginia Mason Hospital Ass'n v. Larson, 9 Wash.2d 284, 114 P.2d 976. In Butterworth v. Keeler, 219 N.Y. 446, 114 N.E. 803, 804, Mr. Justice Cardozo said that non-profit "universities and hospitals are unquestionably public charities"; and in Slee v. Commissioner, 2 Cir., 42 F.2d 184, 185, 72 A.L.R. 400, Judge Learned Hand observed that the object to maintain health without profit "has been a recognized kind of charity from time immemorial."

The Attorney General of the United States on November 2, 1943, advised the President that the Social Security Act is not applicable to non-profit hospitals. He based his conclusion on the fact that non-profit hospitals have been uniformly exempted from the provisions of the income tax law under an identical exemption clause, Section 101(6) of the Internal Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 101(6); and that when formulating the Social Security Act Congress showed its intent in this regard by refusing an amendment specifically exempting hospitals as surplusage because of the uniform construction of identical language by the Bureau of Internal Revenue as exempting non-profit hospitals, "and also on the fear that the insertion of the words added by the Senate amendment might interfere with the continuation of the long-continued construction of the income-tax law." H. Rept. 1540, 74th Cong., 1st Session, p. 7. Opinions of Attorneys General, Vol. 40, Op. No. 72.

An organization such as plaintiff's is of great public benefit. It enables a person of limited means, through the payment of small monthly sums, to receive medical care without resorting to public charity. The need for such protection has long been recognized, and there has been agitation for compulsory insurance of this type. A non-profit hospital which has no stock and pays no dividends renders a public service, and I think Congress has clearly shown its intent to exclude such hospitals from the provisions of the Act.

Plaintiff may have judgment as prayed for.