2007 OK CIV APP 101

**GDT CG1, LLC; Ministries of Jesus, Inc.; and Transformation Fitness Center, LLC, Plaintiffs/Appellants,**

v.

**OKLAHOMA COUNTY BOARD OF EQUALIZATION and Oklahoma County Assessor, Defendants/Appellees.**

No. 104,354.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 28, 2007.

Kelli M. Masters, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, OK, for Plaintiffs/Appellants.

Gretchen Crawford, Assistant District Attorney, Oklahoma City, OK, for Defendants/Appellees.

KENNETH L. BUETTNER, Judge.

¶ 1 Plaintiffs/Appellants GDT CG1, LLC (Property Owner), Ministries of Jesus, Inc. (MJI), and Transformation Fitness Center, LLC (Fitness Center) (collectively, Appellants) appeal from summary judgment entered in favor of Defendants/Appellees Board of Equalization of Oklahoma County and Oklahoma County Assessor (collectively, County) which affirmed County's ruling that Appellants were not entitled to an ad valorem tax exemption. The question presented is whether a non-profit fitness center, which charges most users a fee comparable to other fitness centers in the area, but which offers free services to persons referred by its charitable free health clinic owner, is used exclusively for charitable purposes and thus qualifies for exemption from ad valorem taxation pursuant to 68 O.S.Supp.2004 § 2887. The record shows that MJI purchased Fitness Center to further its purpose of ministering to the physical, emotional, and spiritual needs of its clients, without charge. Although Fitness Center charges membership fees to some clients, it also offers free services to MJI patients, and free sports programs to those unable to pay, and is therefore part of MJI's charitable operation. Fitness Center is therefore exempt from ad valorem taxation. We reverse and remand with directions to enter judgment in favor of Appellants.

¶ 2 Appellants filed their Application for Ad Valorem Tax Exemption in April 2006. County denied the exemption based on its finding that Appellants were operating a commercial business (Fitness Center) on the property. Appellants appealed the denial to County's Board of Equalization, pursuant to 68 O.S.2001 § 2877(A), which denied the exemption after holding two hearings on the

**630**

matter. Appellants then challenged the Board's denial by seeking trial *de novo* in the District Court pursuant to 68 O.S.2001 § 2880.1(A).

¶ 3 In their appeal to the District Court, Appellants claimed Property Owner owns the real property at issue and leases it without cost[1] to Fitness Center, which uses the property to operate a not-for-profit fitness center. Appellants averred that as a single member limited liability company owned by MJI, a § 501(c)(3) publicly supported charity, Fitness Center is treated as an activity of MJI.[2] Appellants argued that the IRS treats organizations like Fitness Center as charitable programs where they are dedicated exclusively to the charitable purposes of the tax-exempt owner. Appellants asserted that the IRS treats not-for-profit, tax-exempt fitness centers as charitable programs under the "community benefit" doctrine because they contribute to education and health of the community. Appellants asserted further that Fitness Center qualifies for the exemption because it is "dedicated exclusively to the charitable purposes of its owner," MJI.

¶ 4 Appellants claimed Fitness Center was accessible and affordable to a significant segment of the community, charged comparable or lower fees than similar facilities, was equipped for those with special needs, and offered occupational and physical therapy, nutritional and educational programs, and offered scholarships for those unable to afford its services. Appellants asserted the primary focus of Fitness Center was to meet the healthcare needs of MJI's patients and to provide health, recreation, and education to the community.

¶ 5 Appellants asserted that in denying their ad valorem exemption, County relied on an opinion issued by the District Attorney, which Appellants claimed was factually and legally erroneous. Appellants claimed the District Attorney erred in presuming MJI is a church and in labeling Fitness Center as a commercial entity. Appellants asserted the District Attorney also assumed that they sought an exemption because funds generated by Fitness Center are used to support MJI's free medical clinic, but Appellants asserted that the activities and programs conducted by Fitness Center are in and of themselves exempt activities as recognized by the IRS. Appellants asserted that the real property and personal property at issue are used exclusively and directly for charitable purposes and that Appellants are therefore enti-

1. The record indicates the *de minimis* rent payments are either $1 per month or $1 per year and the record includes Property Owner's signed relinquishment of any right to the rent payments. The record does not indicate that Property Owner is a non-profit entity.

2. MJI is not a church, but is an organization offering a free medical clinic. Appellants asserted MJI is recognized as a § 501(c)(3) not-for-profit tax-exempt organization recognized by the IRS. Section 501(a) of the Internal Revenue Code exempts from federal income tax organizations described in § 501(c)(3) of the Code. 26 U.S.C.A. § 501. Section 501(C)(3) provides:

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

Appellants asserted that as a single member LLC owned by MJI, Fitness Center is a disregarded entity. A "disregarded entity" is the term used for a one member LLC that does not file IRS Form 8832 to elect corporate treatment for federal tax purposes and is therefore not considered a separate entity from its owner, but is instead considered a branch or division of the owner. *Larason*, "Using One–Member L.L.C.s as 'Disregarded Entities,'" 73 O.B.J. 18, p. 1753 (2002); Announcement 99–102, 1999–43 I.R.B. 545.

Appellants attached to the Petition an IRS *Private Letter Ruling* which explained that a single member LLC owned by an exempt organization will be treated as a related activity, and therefore not subject to unrelated business income tax, if the LLC's "activities will contribute importantly to the accomplishment of (the owner organization's) exempt purposes." PLR 200551023 (2005 WL 3516584).

tled to an exemption from ad valorem taxes according to 68 O.S.2001 § 2887(9). Appellants asked the District Court for judgment declaring their right to exemption from ad valorem tax on the property.

¶ 6 In its Answer, filed June 30, 2006, County generally denied the allegations of Appellants' Petition. County asserted Appellants relied on authority related to the IRS, which County claimed differs from the law applicable to ad valorem taxation. County denied any inference that the property at issue was exempt from ad valorem taxes. County requested judgment in its favor.

¶ 7 Appellants filed their Motion for Summary Judgment November 7, 2006. Appellants listed 7 undisputed facts in support of their motion.[3] County responded with a Cross–Motion for Summary Judgment.

County disputed only one of Appellants' facts (the claim that Fitness Center charged lower fees than other fitness centers), and County listed 7 additional facts it contended proved it was entitled to summary judgment against Appellants.[4]

¶ 8 In Appellants' Response to County's Cross–Motion for Summary Judgment, Appellants noted that County had disputed only whether Fitness Center charges fees comparable to other fitness centers in the area. Appellants asserted, however, that the fees generated had yet to exceed the cost of operating Fitness Center, and that any profits in the future would be put into the operation of MJI, and that the purpose for which Fitness Center operates is charitable. Appellants further responded to each of County's undisputed facts.[5] Appellants added

---

3. Appellants asserted it was undisputed: 1) Fitness Center is a single member Oklahoma LLC owned by MJI, an Oklahoma not-for-profit corporation and § 501(c)(3) publicly supported charity; 2) Fitness Center leases the subject real and personal property from Property Owner for $1 per year, and Property Owner has relinquished the rent payment in writing; 3) Article II, Paragraph 2.5 of Fitness Center's Operating Agreement states its purpose is "to glorify God through engaging in the four aspects of our Lord's ministry, which include preaching the gospel to the poor, and caring for the spiritual, physical and emotional needs of all desiring help.... The Company is organized exclusively for religious, charitable, educations (sic) and scientific purposes, including the making of distributions to organizations that qualify as exempt organizations under (§ )501(c)(3) of the Internal Revenue Code...."; 4) Appellants had taken specific steps to ensure that it qualified as an exempt program dedicated exclusively to the charitable purposes of MJI, including making Fitness Center programs accessible and affordable to a significant segment of the community, with comparable or lower fees than similar facilities, equipping Fitness Center for those with special needs, and offering occupational and physical therapy, nutritional and educational programs, and scholarships for those unable to afford its services; 5) the exclusive focus of Fitness Center was to meet the healthcare needs of MJI's patients and to provide health, recreation, and education to the community; 6) MJI is not a church, but is an organization providing a free medical clinic to anyone who desires treatment, and MJI is a recognized § 501(c)(3) not-for-profit, tax-exempt organization recognized by the IRS; and 7) MJI is registered with the Oklahoma Secretary of State as a charitable organization.

4. County asserted: 1) the real party in interest is Fitness Center, which operates a 70,000 square foot fitness center at 14701 North Kelly, in Edmond, and which is not organized as a § 501(c)(3); 2) Fitness Center sells memberships to the general public on a contract basis, and charges an enrollment fee and monthly dues which are higher than other fitness centers in the area; 3) Fitness Center has more than 2,500 paying memberships; 4) Fitness Center's representative could not answer how many non-paying members were allowed to use its facilities, nor could he answer how many indigent members are allowed to use Fitness Center's facilities; 5) Fitness Center has no policy which offers financial aid to those who seek it; 6) Fitness Center is marketed to the general public in a way similar to the marketing of commercial fitness centers; and 7) Fitness Center does not have an open admission policy, does not actively seek members from all socioeconomic groups, nor is it available to all regardless of ability to pay.

5. Appellants disputed that Fitness Center is the real party in interest. Appellants claimed MJI is the real party in interest because Fitness Center is a disregarded entity. Appellants asserted further that Fitness Center is accessible to the public at large because its fees are comparable to other fitness clubs in the area. Appellants further asserted that those who are unable to pay for Fitness Center's services can become members of Fitness Center by applying through MJI. Fitness Center's number of paying memberships is "significantly lower than normal" for centers of the same size. Fitness Center does not maintain a count of how many non-paying members use Fitness Center or participate in its programs. Appellants claimed Fitness Center in fact has a policy in place for individuals and families who are unable to pay for Fitness Center's services. Appellants noted that those unable to pay must go through MJI's application process. Appel-

four additional undisputed facts in their Response.[6]

¶ 9 County filed a Reply to Appellants' Response, but County did not dispute Appellants' additional facts. County urged that the undisputed facts failed to show that Appellants operated Fitness Center exclusively for a charitable purpose. County further asserted IRS regulations are not applicable to determination of ad valorem tax exemption.

¶ 10 In its Order granting summary judgment to County, the trial court found that "the real property at issue is not used exclusively for a charitable purpose." The trial court held therefore that the property did not qualify for exemption from ad valorem tax.

¶ 11 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275.

¶ 12 The facts are not in dispute; the issue here is one of law which we review *de novo.* All real and personal property, except that which is specifically exempt by law, is subject to ad valorem taxation. 68 O.S.2001 § 2804. The exemption statute applicable here is 68 O.S.Supp.2004 § 2887(9). That statute provides, in pertinent part:

> The following property shall be exempt from ad valorem taxation:
> * * *
> 9. All property used exclusively and directly for charitable purposes within this state, provided the charity using said property does not pay any rent or remuneration to the owner thereof unless the owner is a charitable institution described in Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C., Section 501(c)(3), or a veterans' organization described in Section 501(c)(19) of the Internal Revenue Code, 26 U.S.C., Section 501(c)(19);

Additionally, the Oklahoma Constitution provides that certain property is exempt from taxation:

> § 6. Property exempt from taxation— Property exempt under territorial law— Certain property exempted for limited time—Special election to determine whether certain property exempt
> A. Except as otherwise provided in subsection B of this section, all property used for free public libraries, free museums, public cemeteries, property used exclusively for nonprofit schools and colleges, and *all property used exclusively for religious*

---

lants noted the YMCA has a similar process for low income applicants. Appellants asserted Fitness Center is operated no differently than other exempt centers, such as the YMCA, and that Fitness Center is open to the public at large regardless of faith, race, age, ability, or socioeconomic background. Appellants asserted people may use Fitness Center regardless of ability to pay, so long as they are first assessed by MJI, which Appellants again compared to the assessment required by the YMCA. Finally, Appellants asserted Fitness Center "has in place a system through which it can provide health and wellness services free of charge to individuals who cannot afford membership."

**6.** Appellants asserted 1) MJI's director, David Minyard, envisioned adding a fitness center to provide physical activity for MJI's indigent clients with blood pressure, diabetes, obesity, de-

pression and other illnesses; MJI purchased the business of Fitness Center for the purpose of providing a place for physical fitness and welfare for MJI clients and to benefit the fitness, health, and welfare of the community; MJI leased the facility rent free; 2) counsel advised MJI to set up Fitness Center as an LLC to be treated as a disregarded entity for tax purposes; Minyard is the director of MJI and he has offices at both MJI's facility and at Fitness Center; MJI pays Minyard's salary for his work at MJI and at Fitness Center; 3) MJI and Fitness Center are capable of sustaining themselves financially; and 4) Fitness Center, like the YMCA, is founded and operated on Christian principles, for the purpose of benefitting the community in spirit, body, and soul; Fitness Center is actively developing programs to treat and prevent youth obesity.

*and charitable purposes,* ... shall be exempt from taxation: Provided, that all property not herein specified now exempt from taxation under the laws of the Territory of Oklahoma, shall be exempt from taxation until otherwise provided by law.

\* \* \*

Okla. Const. Art. 10, § 6 (Emphasis supplied). The burden is on the party claiming the exemption to prove the property is exempt from ad valorem taxation. *Board of Com'rs of Comanche County v. Central Baptist Church,* 1929 OK 166, 276 P. 726, 727, 136 Okla. 99, abrogated on other grounds in *Baptist Bldg. Corp. v. Barnes,* 1994 OK CIV APP 71, 874 P.2d 68.

¶ 13 The parties dispute whether the property is exempt from ad valorem taxation under § 2887(9).[7] It is undisputed that Fitness Center does not pay rent to Property Owner. Accordingly, the only issue regarding the applicability of § 2887(9) is whether the property is "used exclusively and directly for charitable purposes" as that phrase has been interpreted in Oklahoma.

¶ 14 The test for whether property is exempt from taxation under § 2887(9) is the physical use for which the property is dedicated; whether that use exempts it from taxation is a question of fact to be determined from the evidence. *State v. Alumnae of Tau Beta Chapter of Chi Omega Fraternity,* 1936 OK 221, 55 P.2d 134, 176 Okla. 186; *Phi Kappa Psi v. State,* 1936 OK 63, 53 P.2d 1130, 175 Okla. 605; *Board of Com'rs of Tulsa County v. Sisters of the Sorrowful Mother,* 1930 OK 5, 283 P. 984, 141 Okla. 32, overruled on other grounds in *Oklahoma County v. Queen City Lodge No. 197, I.O.O.F.,* 1945 OK 55, 156 P.2d 340; *Beta Theta Pi Corporation v. Board of Com'rs of Cleveland County,* 1925 OK 176, 234 P. 354, 108 Okla. 78.

¶ 15 We note the definition of "charitable" for purposes of § 501(c)(3) includes advancement of religion and relief of the poor and distressed, and promotion of social welfare.[8] Appellants attached to their Motion for Summary Judgment an IRS *Technical Advice Memorandum* which indicates that certain health clubs may be exempt based on promotion of health in the community. 1984

---

7. Another subsection of § 2887 appears to offer an exemption for property owned by charitable institutions, regardless of use. Section 2887(8) provides an exemption from ad valorem taxation for:

> All property of any charitable institution organized or chartered under the laws of this state as a nonprofit or charitable institution, provided the net income from such property is used exclusively within this state for charitable purposes and no part of such income inures to the benefit of any private stockholder, including property which is not leased or rented to any person other than a governmental body, a charitable institution or a member of the general public who is authorized to be a tenant in property owned by a charitable institution under Section 501(c)(3) of the Internal Revenue Code....

In this case, because Property Owner is a for-profit entity which leases the facility without cost to Fitness Center, § 2887(8) is not applicable.

8. 26 C.F.R. § 1.501(c)(3)–1(d)(2), Charitable defined, provides:

> The term charitable is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax-exempt purposes which may fall within the broad outlines of charity as developed by judicial decisions. Such term includes: Relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes, or (i) to lessen neighborhood tensions; (ii) to eliminate prejudice and discrimination; (iii) to defend human and civil rights secured by law; or (iv) to combat community deterioration and juvenile delinquency. *The fact that an organization which is organized and operated for the relief of indigent persons may receive voluntary contributions from the persons intended to be relieved will not necessarily prevent such organization from being exempt as an organization organized and operated exclusively for charitable purposes.* The fact that an organization, in carrying out its primary purpose, advocates social or civic changes or presents opinion on controversial issues with the intention of molding public opinion or creating public sentiment to an acceptance of its views does not preclude such organization from qualifying under section 501(c)(3) so long as it is not an action organization of any one of the types described in paragraph (c)(3) of this section.

WL 270630.[9] The record on appeal in this case shows Fitness Center's activities are open to the community and are substantially related to MJI's exempt purposes. An organization which does not extend some of its benefits to individuals financially unable to make the required payments reflects a commercial activity rather than a charitable one. Courts have denied tax-exempt status to a hospital which provided only a *de minimis* amount of free care. "A charitable hospital may impose charges or fees for services rendered, and indeed its charity record may be comparatively low depending upon all the facts ... but a serious question is raised where its charitable operation is virtually inconsequential." *Federation Pharmacy Services, Inc. v. C.I.R.*, 625 F.2d 804, 807 (8th Cir.1980). The court in *Federation Pharmacy* noted several factors relevant to a finding of charitable purpose or use: if an organization is an adjunct of a non-profit, exempt organization, has a plan for soliciting charita-

(Emphasis added).

9. The Memorandum is not precedential, but its reasoning and analysis are helpful to our determination of whether Fitness Center is a charitable organization. The facts outlined in the Memorandum indicate that the subject organization was a § 501(c)(3) based on its purpose to provide for the welfare of people by offering services and facilities that contributed to their physical, social, mental, and spiritual health. The organization operated a general physical fitness program which was open to the public through paid memberships. The organization also offered a higher-priced health club within the same facility, and the organization offered its programs under trained fitness specialists and medical professionals. The party opposing the exemption claimed the applicant organization was similar to other commercial fitness clubs, but the organization claimed its medically-supervised health club promoted health in the manner of a hospital, and it claimed its fees were set so that membership was within reach of the community as a whole.

The Memorandum analyzed portions of the Internal Revenue Code addressing unrelated businesses, for purposes of extending an exemption to related organizations, and noted that for purposes of 26 U.S.C. § 513, a business operated by an exempt organization will be considered related to the exempt purposes (and therefore also exempt) "where the business activities (have) a causal relationship to the achievement of the organization's exempt purposes other than through the production of income for the exempt organization." And, in finding a causal relationship, one factor to consider is the size and extent

ble contributions, and offers services to some for free or below cost, all suggest a charitable purpose; on the other hand, where the claimed charitable organization is in direct competition with other commercial enterprises or is organized or operated for the benefit of private interests, these facts go against a finding of charitable purpose. *Id.*

¶ 16 County asserts that Fitness Center is a commercial enterprise. The Oklahoma Supreme Court has noted that *Federation Pharmacy* roughly defined commercial as being associated with profit. *Massengale v. Oklahoma Bd. of Examiners in Optometry*, 2001 OK 55, 29 P.3d 558, 563. Nothing in the record indicates that Fitness Center is a for-profit enterprise.

¶ 17 Additionally, Appellants note that the Oklahoma Supreme Court and Oklahoma Court of Civil Appeals have previously found the promotion of health is itself a charitable

of the activities in relation to the nature and extent of the exempt function they serve. The Memorandum noted that "in certain instances, an asset or facility necessary to the conduct of the exempt functions of an exempt organization may also be employed in a commercial endeavor so as to give rise to unrelated business taxable income." The test of whether a dual use is exempt is whether the activities "contribute importantly to the accomplishment of the organization's exempt purposes." The memorandum noted also that the promotion of health is a charitable purpose, and in certain circumstances, a community recreation facility open to the community as a whole may be recognized as charitable. To summarize, the Memorandum found that recreational facilities which are operated as part of an exempt organization's goal of promoting health may be considered charitable when the facilities are available to the general community, which may be shown by a fee structure which is affordable to most in the community. The Memorandum concluded that the applicant's
    medically-supervised health clubs promote a
    community-wide benefit for the community
    (the organization) serves in furtherance of (the
    organization's)exempt purposes. The health
    club activity, in this particular case, is distin-
    guishable from the health club activity de-
    scribed in Rev. Rul. 79–360, wherein compara-
    ble commercial fees were sufficiently high to
    restrict use of the club's facilities inappropri-
    ately to a limited segment of the community.
      In this particular case, the operation of ...
    medically-supervised health clubs is substan-
    tially related to (the organization's) exempt
    purposes under section 501(c)(3) of the Code

purpose. Those cases require more than promotion of health; there must be some charitable component. See *Baptist Health Care Corp. v. Okmulgee County Bd. of Equalization*, 1988 OK 11, 750 P.2d 127 (holding that a church retirement home, open to all regardless of ability to pay, is exempt even where some residents pay rent. "Property which produces income for private profit, or which is not available to all regardless of ability to pay, or which itself is income property, cannot be property which is used "exclusively" for religious or charitable purpose.");[10] *William K. Warren Medical Research Center, Inc. v. Payne County Bd. of Equalization*, 1994 OK CIV APP 167, 905 P.2d 824 (reasoning that a health clinic which charged patients fees for services, but which wrote off charges to certain patients who were unable to pay, was a charitable, exempt enterprise).[11]

¶ 18 The record includes Fitness Center's Operating Agreement, which shows that it is not operated for the benefit of any private interests. David Minyard, the executive director of MJI, testified by deposition about the formation of MJI and Fitness Center.[12] Minyard explained that in January 2002 Henderson Hills Baptist Church in Edmond started MJI as a free health clinic open to anyone in the community. The purpose of MJI, as explained by Minyard is to "take a holistic approach to health care doing spirit, soul and body health care to the community." He explained MJI offers Christian counseling, prayer services, "encourager services," and that physician volunteers provide free health care. Minyard testified that MJI is open to anyone, regardless of income, and MJI does not accept payment for its services. Minyard testified that the philosophy of MJI is that a person cannot be healthy "unless they're spiritually, emotionally, relationally and physically healthy. So anybody that comes in receives an assessment in all ... areas ... And a treatment plan is developed based on those four areas."

¶ 19 Minyard explained how MJI decided to acquire Fitness Center:

It was a vision that I had that I thought that a fitness facility would fit very well with what the clinic was doing. So that the indigent clients with blood pressure problems and diabetes, obesity, variety of illnesses, depression, for instance, that we're treating with people needed (*sic*) physical activity and would benefit from physical activity.

And so I wrote up a business plan to try to raise funds to build, ... a fitness center to function as this physical piece to aid the clinic. In addition to which, it could function as a fitness center selling memberships much as the Y [YMCA] does to be able to, A, pay its own bills to pay its

---

and does not constitute unrelated trade or business under section 513.

10. In *Baptist Health Care*, the court noted it had previously relied on a seven-factor test, as announced in *Oregon Methodist Homes, Inc. v. Horn*, 226 Ore. 298, 360 P.2d 293, 298–303 (1961), for finding a charitable purpose in the operation of a retirement home:

1. Whether rent receipts are applied to upkeep, maintenance and equipment of the institution or are otherwise applied.
2. Whether [residents] receive the same treatment, regardless of their ability to pay.
3. Whether the facilities are open to all, regardless of race, creed, color, religion or ability to pay.
4. Whether charges are made to all patients and, if made, are lesser charges made to the poor or are any charges made to the indigent.
5. Whether there is a charitable trust fund created by benevolent and charitably minded persons for the needy or are donations made for the use of such persons.

6. Whether the institution operates without a profit or private advantage to its founders and officials in charge.
7. whether the articles or by-laws of the corporation make provision for the disposition of surplus assets upon dissolution.

11. We note that in *William K. Warren*, the court relied on the fact that the clinic offered at least some free services to patients who were unable to pay. The dissent in that case asserted the amount of charity cases was too small to support an exemption (which in that case was sought under § 2887(8)). It is important to note that promotion of health alone is insufficient. All fitness clubs are not exempt simply because their services are intended to result in improved health. There must be some charitable component of serving those unable to pay.

12. Minyard explained that he has two offices, one at MJI and one at Fitness Center, and he goes to both offices each day. Minyard performs general oversight at Fitness Center.

way.... And then any excess revenues could be put back into the clinic to facilitate the health care.

One of Hobby Lobby's employees saw the business plan. They were buying the fitness center which was having trouble, I guess.... And then through that they approached me, asking if we could use this if they donated this to the-to the ministry,....

So they bought the real estate and own the building ... And then (MJI) ... bought the business ... and then changed it to become (Fitness Center). And so we own the business and then rent the facility from (Property Owner).

¶ 20 Minyard also explained that part of his job is fund-raising for MJI, and that Fitness Center has not yet produced funds for MJI's use.[13]

¶ 21 Minyard testified about how people become members of Fitness Club. Paying members join after touring the facility. Minyard estimated there were 2,500 to 2,700 members, but Minyard did not know how many of those were paying or non-paying members. Minyard also was unsure how many members had been members before Fitness Center purchased the business. As for non-paying members, Minyard testified:

Q: How does ... Fitness Center determine who doesn't have to pay a membership?

A: The members that are scholarshipped in for different things either come in through the free clinic (*sic*). (MJI), in other words, refers them over. People that are indigent that need help with fitness and it's a part of their health benefit or from the Transformation Counseling Center. People, for instance, that are depressed are sent or referred over through the physicians or through the LPCs refer them over (*sic*).

The we also have, for instance, in our basketball program, in our swim program,

... there are children that come in through those programs normally that are known to the people running the programs that are indigent and can't afford it. And those people then are scholarshipped into those-those programs.

Q: How many individuals has (MJI) referred to (Fitness Center)?

A: I don't know.

* * *

Q: How does ... Fitness Center provide for indigents to become members?

A: The indigents from (MJI) are referred there.

Q: But do you have to be referred by (MJI) to use the Fitness Center if you're indigent?

* * *

A: You mean if somebody just showed up and said "I can't pay."

Q: (Yes).

* * *

A: What he would do is he would be referred to the clinic to go through (MJI) and sent to (MJI). And then there they're (*sic*) who qualifies any individual. We have a form that we qualify those individuals through with income sheets, family income. And then they would be referred back through to (Fitness Center).

Q: ... So nonpaying members or a nonpaying individual couldn't use (Fitness Center) unless he was actually referred by (MJI)?

A: Or if he was in through a basketball program. I mean, there's programs that we do that you don't have to be a member of the center that they participate in.... The coaches come in and tell us, you know, "These kids can pay. These kids can't." And we scholarship the ones that can't in (*sic*).

Q: But what about for adults?

---

**13.** We therefore agree with Appellants that the District Attorney's legal opinion was factually erroneous insofar as it asserted Appellants claimed Fitness Center was charitable because its profits were used to fund MJI. Additionally, we do not suggest that any business that has failed to make a profit is exempt from taxation on that basis. As the record in this case shows, MJI purchased Fitness Center as an auxiliary benefit for its free clinic patients and its Operating Agreement prohibits its officers from profiting from its operations.

A: Most of the adults come through either Transformation Christian Counseling Center or it (*sic*) comes from (MJI) clinic.

The fact that non-members must go through MJI shows Fitness Center is a related adjunct or extension of MJI's charitable work. And, as noted above, MJI has no requirement for minimum or maximum income for its services. The undisputed evidence shows Fitness Center is open to all so long as they are referred to Fitness Center as part of their free treatment from MJI.

¶ 22 Minyard testified that in addition to its exercise machines, classes, and sports programs, Fitness Center also offers nutrition programs, dietary counseling, and personal training. Minyard explained how Fitness Center differs from other fitness clubs in the area:

(W)e offer scholarship programs for some of the programming that we do with basketball, with swimming. Also with performance athletics and the summer programs with them. We offer free memberships to the (MJI) clinic clientele and the Transformation Christian Counseling personnel that need it.

We're developing a program for obese youth that's epidemic in our society. So we're trying to work with kids starting as early as 6 up to about 13 to develop nutritional programming for them. LPCs are volunteering to come in and do that programming and then the personal trainers....

And then (MJI) will be able to take its overweight child population and refer them into that program so that those will be scholarshipped into the program to be able to facilitate those kids.

* * *

We also work with Special Olympics. They do their weight training and some of their speed training and agility training. And they're not charged.

¶ 23 Minyard later described more precisely how MJI began referring its patients to Fitness Center:

Q: You don't know how many people were referred to ... Fitness Center from (MJI)?

A: The way that comes about is I set the program up. So I know that for the first eight people, I have a meeting with my doctors. I tell them what's available, what we can do. The clinic triage nurses understand what's available. And then I set the program up.

So I followed the first probably eight or ten clients to make sure that if, for lack of a better term, that the wheel is greased, that I ... that is working.

So I know that those first ... were the first two sent over. And they were sent in because they were having problems with ... diabetes, with blood pressure and ... weight issues....

And so then what they do is they receive on a prescription from the physician. He refers them to the club. And then the club has their name. So then they have to show up at the club. They fill out the membership application. They go through the tour. They do everything just like a normal member would do.

Then they're given their visits, their free visits with the personal trainer who sets them up on a training regimen. Then they have a month's free membership. They check in with a card reader every time that they come in just like every other member.

The difference is those clients' names that are referred from the clinic then are sent back to the clinic that says, "(client) came X number of times this month." Then the clinic requires them to show up at the clinic to have blood pressure taken, have weight gain checked to see where they are and monitor their health to see how they're doing,....

And then ... that membership's renewed for that ... next month. If they don't show up at the clinic, then the clinic calls them and says, "Joe and Mary you didn't show up here. What's the problem?" And Joe and Mary then either have to show up or what we tell them is, you know, "We're sorry. We need you in here for us to check your blood pressure, for us to check your weight gain, weight loss to

check on your health issues before we can renew this membership."

So it's the clinic that's kind of in control of their well-being, . . . in the clinic.

Minyard testified that the personal trainers at Fitness Center have also referred paying members of Fitness Center to MJI when those members have appeared to be in need of health care.

¶ 24 Finally, Minyard testified that Fitness Center is operated according to Christian principles. Minyard explained the purpose of Fitness Center "is to provide a place for fitness and physical fitness and welfare for (MJI)'s clients and then to benefit the fitness and health and welfare of the community in general."

¶ 25 Minyard's testimony established that Fitness Center has a charitable purpose and use. Fitness Center offers free fitness facilities and training to anyone referred by MJI and offers free programs to children who are unable to pay and to Special Olympics participants. Fitness Center's Operating Agreement expressly states that it may not benefit private interests, and Fitness Center is an adjunct of the charitable MJI. We next consider whether that use may be considered exclusive for purposes of the ad valorem exemption statute.

¶ 26 The Oklahoma Supreme Court's most recent pronouncement on this question is *In re Real Property of Integris Realty Corporation*, 2002 OK 85, 58 P.3d 200. In that case, the district court held that certain Integris-related property was exempt from ad valorem taxation and the county appealed. Although the majority and dissenting opinions disagree as to whether there were disputes of fact, the majority decision affirmed summary judgment. The facts noted in the majority decision showed that IPI, a charitable organization, owned certain real property which it leased to BMPA, a for-profit limited partnership. BMPA built offices on the property and leased about one third of the space to IRC, which "sublet the leased space to various Integris nonprofit entities who used the space for charitable, educational and scientific purposes." *Id.* at ¶ 2.

¶ 27 In *Integris*, the county denied the exemption because BMPA was not a charitable organization and because it leased part of the building, for profit, to non-charitable groups. *Id.* at ¶ 3. The county noted that Oklahoma courts had previously focused on "the use to which the property is dedicated and devoted" as the test for whether it was exempt, but it argued that test failed to adequately consider "exclusivity of use." *Id.* The county claimed that because BMPA leased some of the space to Integris non-profit groups, but also leased other space in the same building to for-profit organizations, then the charitable use was not exclusive. *Id.* at ¶ 7.

¶ 28 After noting that the relevant use is the physical use, and not the economic use (or profits) of a building that matters in determining ad valorem tax exempt status, the court recognized its previous holding that real property that was used only partly for charitable purposes could be taxed in proportion to its respective uses so that the charitable use is exempt. *Id.* at ¶ 11, citing *Queen City Lodge, supra.*

¶ 29 The majority decision in *Integris* concluded that the physical use of the non-profit leased space was charitable and that the trial court therefore correctly found that part of the building was exempt. The dissent indicates that the leased premises were for Integris-related entities which included engineering, education and training, facility planning, physician services, legal, hotel, and various centers for medical care. As noted by the dissent, these entities, particularly engineering, legal, and the hotel, are at most related to the hospital's charitable purpose. The majority found "that the portions of the involved building for which tax exemption is sought were used for **hospital-related services** in furtherance of the charitable, educational, and scientific purpose of various Integris non-profit entities, and that the facilities occupying the space for which exemption is sought were open to the public without discrimination regardless of ability to pay." 58 P.3d at 203, fn. 11 (emphasis in original). This holding applies equally to the Fitness Center at issue here.

¶ 30 In this case, the record shows that the undisputedly charitable MJI organized Fitness Center as a related entity to augment the free health care offered by MJI. The fact that some patrons pay for memberships at Fitness Center does not negate the charitable character of the activity.[14] The undisputed evidence shows that the doors to Fitness Center are open to all, regardless of ability to pay. As noted by the dissent in *Integris,* that is the test for charitable use of property, citing *In re Farmers' Union Hospital Assoc. of Elk City,* 1942 OK 128, 126 P.2d 244, 190 Okla. 661. Indeed, those unable to pay receive not only free fitness training but free care in all aspects of physical, emotional, and spiritual health by virtue of the required MJI assessment. And as noted above, Fitness Center is not organized for profit, nor for any other private benefit. *Integris* teaches that exclusive use allows for an exemption for entities related to a charitable purpose. We are constrained to follow that holding and we therefore find the undisputed evidence here shows that Fitness Center is used exclusively for charitable purposes and is exempt from ad valorem taxation.

REVERSED AND REMANDED WITH DIRECTIONS TO GRANT THE EXEMPTION.

HANSEN, P.J., concurs in result, and BELL, J., concurs.

---

14. There is no question that fitness facilities may be charitable activities. See *Ola v. YMCA of South Hampton Roads, Inc.,* 270 Va. 550, 621 S.E.2nd 70 (Va.2005); *Dynamic Sports Fitness Corp. Of America, Inc. v. The Community YMCA of Eastern Delaware County,* 768 A.2d 375 (Pa. Cmwlth.2001); *Clubs of Cal. For Fair Compet. v. Kroger,* 7 Cal.App.4th 709, 9 Cal.Rptr.2d 247 (Cal.App.1992)(review denied).